UNITED STATES of America, Plaintiff,

v.

David Roy WINTERS, Defendant.

No. S Cr 75–12.

United States District Court,
N. D. Indiana,
South Bend Division.

Aug. 4, 1977.

John S. Leonardo, Asst. U. S. Atty., South Bend, Ind., for plaintiff.

Timothy W. Woods, South Bend, Ind., Kim D. Jordan, Hammond, Ind., for defendant.

## ORDER

ALLEN SHARP, District Judge.

The defendants, David Roy Winters and Arnold Brewer, were each charged by way of an indictment, Count I of which alleged the violation of Section 1201(a) and 2, Title 18 of the United States Code, and Count III of which charged each of them with a violation of Section 924(c) of Title 18 of the United States Code. (Count II of the same indictment was dismissed on motion of the Government preliminary to the trial of either defendant.)

Arnold Brewer was tried first and separately before this Court in South Bend, Indiana, which trial resulted in jury verdicts of guilty as to him on Counts I and III. At the request of the defendant, David Roy Winters, his trial was held in Hammond, Indiana on the 16th and 17th of May, 1977. On May 17, 1977 the case was submitted to the jury as to the defendant, David Roy Winters, on Counts I and III. A verdict was returned by the jury on both Counts I and III and upon the return of such verdicts the following proceedings were had in open court in the presence of the defendant, David Roy Winters, and all counsel:

"THE COURT: You may be seated.

Who is the Foreman of the jury?

MR. SIMIC: I am, your Honor.

THE COURT: Has the jury reached verdicts on Counts I and III of the indictment?

MR. SIMIC: Yes, your Honor.

THE COURT: Please hand the verdict forms to the Deputy Marshal. I want to see them first. The Marshal will hand them up to the Court.

The Clerk will read the verdict and the defendant will rise.

THE CLERK: U.S.A. vs. David Winters, Cause No. S CR 75–12. Verdict: We, the jury find the defendant, David Winters, guilty as charged, guilty as to Count I in the indictment, dated May 17th, 1977, signed Thomas Simic, Foreman.

Omitting the caption, we, the jury find the defendant, David Winters, guilty as to Count III of the indictment, dated May 17, 1977, signed Thomas Simic, Foreman.

THE COURT: Hand up the verdict forms, please.

You may be seated, sir.

Ladies and gentlemen of the jury: Did you select and elect Thomas Simic as the Foreman of this jury?

THE JURY: Yes.

THE COURT: You have heard the Clerk read the verdict as to Count I. The Clerk has read that the jury finds the defendant, David Winters, guilty as to Count I of the indictment.

Is this the verdict of each and all of the members of this jury?

THE JURY: It is.

THE COURT: Do any one of the 12 members of this jury now object to or dissent from this announced verdict on Count I? If so, please indicate it.

(No audible response.)

THE COURT: You have heard the Clerk read the verdict of the jury as announced on Count III; that verdict being a verdict of guilty.

Is this verdict of guilty on Count III of the indictment the verdict of each and all of the 12 members of this jury?

THE JURY: It is.

THE COURT: Do any one of the 12 members of this jury now in any way object to or dissent from this announced verdict on Count III? If so, please indicate.

(No audible response.)

THE COURT: Ladies and gentlemen, thank you for your time and attention to this case. It is the policy of the Judge of this Court in this and in all other cases that you do not have to answer anyone's questions about the contents of your deliberations or reasons for your verdict unless I order you to do so, and if I do it, you will know it.

So those connected with this case and all others are now enjoined from interrogating you about your deliberations or the reasons for your verdict. There are good reasons for that; one of which is

you may be called back for other cases, but there are other good reasons.

So with that said, and I understand the work slip problem has been handled, you are discharged and released with my renewed thanks. You may leave out this door."

At the time the above proceedings were had in regard to the return and announcement of verdicts this Court takes judicial notice of the fact that none of the 12 members of this jury in any manner through conduct or words indicated then that any objection existed as to these two announced verdicts.

Subsequently, on the 18th and again on the 19th of May, 1977, the juror, Albert Douglas, called the chambers of this Judge in this Court in South Bend, Indiana and spoke with a member of this judge's staff but did not speak with this Judge personally.

Thereafter, on the 20th day of May, 1977, this Judge wrote a letter which is a part of the record in this case to both defense counsel and to the Assistant United States Attorney, which letter reads as follows:

"Gentlemen:

This will give some information regarding an incident subsequent to the verdicts in this case. On Wednesday, May 18, 1977, one of the members of the jury, Albert Douglas, called my office in South Bend and spoke to Mr. Vance Curtis. He did not speak to me but indicated a desire to do so. He stated to Mr. Curtis that he desired to relay certain information about the deliberations in this case. He did not relate to Mr. Curtis anything further at that time.

He called again on May 19, 1977 and again spoke to Mr. Curtis on the same subject matter.

On the second call he did not relate the precise nature of the information that he wanted to convey but expressed a renewed desire to talk to me. I was not present in the office at the time of his second call and did not talk to him.

After the second call I authorized Deputy United States Marshal Joseph Ro-

gowski to interview Albert Douglas either in person or by telephone and further ordered that Deputy United States Marshal Oswalt witness any such interview. I am orally advised that such an interview did take place on May 19, 1977 and Marshal Rogowski will be forwarding a written summation of the same to me.

Since this incident has come up I felt obliged to inform all counsel of it and in doing so, am making no judgment as to what, if any, effect it might have on the verdicts rendered by the jury in this case.

I think some guidelines are in order in regard to this incident. Certainly, all counsel and all parties are free to interview Deputy Marshals Rogowski, Oswalt and Yates. I will gladly make available to all counsel the contents of the written report that I am to receive from Marshal Rogowski, which I have not yet received. It is my further belief that any interviews by anyone of any member of this jury should be conducted in a very controlled situation established in advance by an order of this Court. I do not believe that ex parte interviews of any member of this jury by the counsel or representative of any party is now in order. As indicated, if such interviews should become necessary they should be authorized by an express written order of this Court after due consultation with counsel for all parties."

Thereafter, on the 10th of June and on the 22nd of June, 1977 evidentiary hearings were held at which time juror, Albert Douglas, the Foreman of the jury, Thomas Simic, and juror, Scott T. Howat, as well as Deputy United States Marshal, Bruce Yates, were interrogated under oath by the Court.

█ The defendant objected to the manner in which the Court conducted said evidentiary hearing and asserted the right of defense counsel to personally question the witnesses who testified in that proceeding. The only authority cited to the Court was the American Bar Association Project on Minimum Standards for Criminal Justice,

Standards Relating to Trial by Jury, Section 5.7(c), Approved Draft 1968, which standards were cited as authority in *United States v. Thomas*, 463 F.2d 1061 (7th Cir. 1972). In each instance before a witness was excused both defense counsel and counsel for the United States of America had a full and complete opportunity to submit proposed questions to this Court to be asked and in all instances such questions were in fact asked. This precise procedure by which the district judge solely propounds the questions at this type of hearing is consistent with authority on this subject. *See Rakes v. U. S.*, 169 F.2d 739 (4th Cir. 1948); *Miller v. U. S.*, 403 F.2d 77 (2d Cir. 1968); and *U. S. v. Brasco*, 385 F.Supp. 966 (S.D.N.Y.1974).

This Court is very much concerned of counsel interrogating jurors after a verdict has been reached whether that counsel be for the United States of America or for a defendant. That practice has been the subject of considerable concern in other federal judicial quarters. See *Bryson v. U. S.*, 238 F.2d 657 (9th Cir. 1956); *Northern Pacific Ry. Co. v. Mely*, 219 F.2d 199 (9th Cir. 1954); *U. S. v. Miller*, 284 F.Supp. 220 (D.Conn.1968); *U. S. v. Crosby*, 294 F.2d 928, 950 (2d Cir. 1961), cert. den. 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523 (1962).

The proceedings here that involve the interrogation of three members of this jury are very closely analogous to the proceedings on voir dire examination. It is the universal practice of this Judge of this Court to conduct such voir dire examination but always affording counsel a full opportunity to submit questions to the Court before any challenges are required. Therefore, the procedure established for these hearings did not in any way violate the due process rights of this defendant and were consistent with the mandate imposed upon this Court in *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), and by our own Court of Appeals in *U. S. v. Thomas*, 463 F.2d 1061 (7th Cir. 1972).

Albert Douglas testified that handwritten sheets of paper with writing on both sides and with numbers were presented to him during the middle to latter part of the deliberations in this case. The record indicates that the jury retired at approximately 11:07 A.M. after which lunch was served to them in the jury room. They returned to open court at approximately 2:22 P.M. at which time the Court dealt with a note received during deliberations and the verdicts were announced in open court at 6:50 P.M. Douglas testified at that time he was the only juror who had voted not to convict the defendant and that a crippled juror, Scott Howat, asked the jury foreman to show these papers to Douglas first. Douglas further testified that these papers concerned evidence which had been presented at the trial and in general summarized the evidence. Douglas stated that he did not observe any juror writing these notes and that he believed that they had therefore come from outside the jury room. In addition he stated that he believed that the Deputy United States Marshal had taken these papers out of the jury room along with the exhibits and the instructions following the jury's deliberations. The Deputy Marshal testified that he had returned the exhibits admitted into evidence and a copy of the court's instructions which had been available to the jury for their deliberations.

Mr. Simic, the jury foreman, testified that during the latter part of the deliberations he had given two or three sheets of handwritten notes which had been prepared by the crippled juror, Howat. Simic said that he had observed Howat writing these notes which were written in pencil and on paper and which had been provided in the jury room. Simic stated that these notes were a summary of the trial evidence which he read aloud to the entire jury and then at Howat's suggestion he gave them to the "holdout" juror, Douglas, to read. Simic stated categorically and without reservation that at no time did he see any written materials being brought into the jury room during the deliberations other than the exhibits and the instructions provided by the Deputy Marshal.

Deputy Marshal Yates testified that to his knowledge no papers were brought into the jury room other than those previously described.

Scott Howat testified that he had reread the court's instructions and had written out his view of the evidence in the case during the jury deliberations in the jury room in order to aid the jury in reaching a unanimous decision. Howat said that his notes were particularly directed to Douglas who was the "holdout" but that the foreman had read the notes to the entire jury as well. Howat produced these notes and indicated that these were the only notes that he prepared during the course of deliberations and that he had saved, preserved and protected them in precisely the same condition that they had been in at the time of the deliberations of this jury. These exhibits are now a part of the record of this case and consist of three handwritten sheets of paper written in pencil. Howat testified categorically under repeated questions that he had prepared all of these notes during the course of the deliberations of this jury in the jury room.

Any allegations of or any conceivable inference of jury misconduct must be viewed with the utmost seriousness. The processes of jury deliberations must be protected as much as is humanly possible from any improper extraneous influences. The record in this case is utterly devoid of the slightest inference that any member of this jury in any way engaged in any conduct which is even arguably improper. The principal case from the Supreme Court of the United States is *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954). In it the jury foreman was contacted during the trial by an unknown individual who stated that "he could profit" by bringing in a verdict favorable to the defendant. This was immediately brought to the attention of the trial judge and subsequently defense counsel learned of the incident, after a verdict was returned. A new trial was requested and the court denied the motion for a new trial and refused to hold a hearing to determine the circum-stances surrounding the incident and its effect on the jury. The Court of Appeals affirmed and the Supreme Court reversed with Mr. Justice Minton writing the Supreme Court held that the defendant was entitled to a hearing to determine the effect of the remark and whether or not the defendant had been prejudiced. Certainly no one can suggest that the full mandate for a hearing in *Remmer* has not been met here. In addition, this Court now holds and finds that there was no extraneous influence brought to bear on this jury whatsoever during its deliberations.

In *U. S. v. Thomas*, 463 F.2d 1061, 1063 (7th Cir. 1972), the defendant was convicted of mail fraud. During the deliberations a number of the members of the jury brought a newspaper article relating to the trial into the jury room. Again the district judge denied a post-trial motion for a hearing to investigate the matter. Judge Swygert, speaking for the Court of Appeals, reversed and remanded holding:

> "In the instant case, we find that the district court, when presented with evidence indicating that a prejudicial news article was actually present in the jury room and, more importantly, that it was in fact used by some jurors to persuade others, was at the very minimum required to investigate further." *Thomas,* supra, at p. 1063.

Again this Court fully complied with the mandate of *Thomas* by initiating an investigation on its own motion. Here, however, unlike *Thomas*, there was no extrinsic influence brought to bear.

In *U. S. v. McKinney*, 429 F.2d 1019 (5th Cir. 1970), the court mandated a district judge, when apprised of an allegation of juror misconduct to conduct a full investigation to ascertain whether the alleged jury misconduct actually occurred; if it occurred the district judge must determine whether or not it was prejudicial; and unless he concluded that it was clearly not prejudicial he must grant a motion for a new trial. If the district judge concludes that it did not occur or that it was clearly not prejudicial he must spell out his findings with ade-

quate specificity for meaningful appellate review. It is with this mandate in mind that this Court chooses to set forth its findings and reasons fully.

■ It is general proposition, long established, that a juror may not impeach his own verdict once the jury has been discharged. See *McDonald v. Pless*, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915), and *U. S. v. Dressler*, 112 F.2d 972 (7th Cir. 1940). Thus, generally matters which are extrinsic will not be grounds for impeaching a verdict. The matters that are described in this record are clearly intrinsic. It is true that a juror may testify as to any fact bearing upon the questions of the existence of any extraneous influence although he may not testify as to how far that influence may have operated on his mind. See *Mattox v. U. S.*, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892) and *U. S. v. Bensinger*, 492 F.2d 232 (7th Cir. 1974). "Extraneous influence" has been construed to cover publicity received and discussed in the jury room. See *Marshall v. U. S.*, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959), and *U. S. v. Thomas*, 463 F.2d 1061 (7th Cir. 1972). Extraneous influence can be matters which were considered by the jury but not admitted into evidence. See *Farese v. U. S.*, 428 F.2d 178 (5th Cir. 1970). Also, communications or other contact between jurors and third persons, including contact by the trial judge outside of the presence of the defendant and his counsel may be extraneous influences. See *Parker v. Gladden*, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966). In contrast, evidence of discussions among jurors, even intimidation or harassment by one juror of another, is not generally considered to be extraneous influence. See *U. S. v. Kafes*, 214 F.2d 887 (3d Cir. 1954); *U. S. v. Blackburn*, 446 F.2d 1089 (5th Cir. 1971), cert. den. 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665 (1972). Other intra jury influences on the verdict is within the rule rather than the exception and is not competent to impeach a verdict. See *U. S. v. Kohne*, 487 F.2d 1395 (3d Cir. 1973), cert. den. 417 U.S. 918, 94 S.Ct. 2624, 41 L.Ed.2d 224 (1974).

■ In this case the Court holds categorically that there was no extraneous influence. In addition, the discussions and deliberations of the jury were completely reasonable and it is obvious that a very careful and reasoned approach was being used by the majority to convince the minority. Nothing in the exhibit is referred to that is not inferable from the evidence in the case heard by the jury during this trial.

■ It is basic that the doubts must be resolved in this context in favor of the defendant and the Government carries the burden of proof. See *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), and *U. S. v. Isaacs*, 364 F.Supp. 895 (N.D.Ill.1973). Resolving every doubt in favor of this defendant this Court concludes beyond any shadow of a doubt that no misconduct whatsoever took place in this case and no extraneous influences whatsoever were brought to bear on this jury.

Defense counsel attempts to argue that some other handwritten papers must exist. Such suggestion is absolutely without support in this record.

This defendant received a fair and impartial trial represented by two experienced and competent defense counsel and this Court has been presented with no reason whatsoever to disturb the announced verdicts as to this defendant in this case. Therefore, the defendant's Motion for New Trial is DENIED, and the sentencing of this defendant, David Roy Winters, is now set for South Bend, Indiana at 1:00 o'clock P.M. on August 12, 1977.