Robert L. DeMIER, Barbara DeMier, Appellants,

v.

UNITED STATES of America, Appellee.

No. 79–1700.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 14, 1980.

Decided Feb. 28, 1980.

Michael Lerner, Barnett & Lerner, Kansas City, Kan., for appellants.

Sheryle L. Jeans, Atty., U. S. Dept. of Justice, Kansas City, Mo. (argued), and Ronald S. Reed, Jr., U. S. Atty., Kansas City, Mo., on brief for appellee.

Before ROSS and HENLEY, Circuit Judges, and PORTER, District Judge.*

## SUMMARY

DONALD J. PORTER, District Judge.

Appellants, husband and wife, were jointly indicted for eight violations of the mail fraud statute, 18 U.S.C. §§ 1341 and 2, and appellant Robert DeMier was indicted for violating 18 U.S.C. §§ 922(m) and 2 by making a false entry in a bound firearms acquisition and disposition record, which record he was required to keep as a licensed firearms dealer. The nine-count indictment was returned twenty months after a fire occurred on the premises of Bob's Party Shop and Deli in Independence, Missouri, a business owned and operated by appellant Robert DeMier. Appellants allegedly hired an acquaintance to arrange the burning of their business so that appellants could submit a loss claim to their property insurer. The eight mail fraud counts involved mailings made incident to or as a result of this claim. The ninth count involved a notation by appellant Robert DeMier in his firearms acquisition and disposition record that a particular .38 caliber derringer he owned had been stolen from his business premises the day of the fire. It was alleged that appellant Robert DeMier had, in fact, given the gun to the acquaintance who arranged

---

* The Honorable Donald J. Porter, United States District Judge for the District of South Dakota, sitting by designation.

the fire. After jury trial, appellants were convicted on each of the eight mail fraud counts and Robert DeMier was convicted on the firearm record count.

On appeal, appellants contend that: (1) The evidence was insufficient to prove a specific intent to defraud; (2) Count IX against Robert DeMier was multiplicitous when charged with the mail fraud counts; (3) the trial court admitted the co-conspirator statements of prosecution witnesses even though there was insufficient independent evidence of a conspiracy; and (4) the trial court admitted perjured testimony of a prosecution witness, testimony the government knew was false. We overrule each of appellants' contentions, and affirm the judgments entered by the trial court.[1]

### FACTUAL BACKGROUND

In 1975, Robert DeMier bought an existing delicatessen and liquor store business located in Independence, Missouri. He and his wife Barbara thereafter operated the business as Bob's Party Shop and Deli. In May, 1977, Robert Androus (an acquaintance of both DeMiers and once an employee of an unrelated business formerly owned by Barbara) went to a garage sale at the DeMier home. According to Androus, Barbara at that time said that she and her husband wanted out of their delicatessen, and asked Androus if he knew anyone who could set fire to the business for them. Androus contacted one Fain, and it was arranged with Barbara that Fain, posing as a roofing contractor, would inspect the interior layout of the premises at a time when the DeMiers were not there. Fain did so, and agreed to set the fire for a price which was communicated to Barbara. She agreed to the price and sent Fain five hundred dollars, through Androus, as an advance partial payment.

In June, Fain and Androus met with Barbara at the delicatessen. She showed Fain the premises' alarm system and informed him that the electric eye device had been disconnected (by the Mossie Alarm Company at her request). She also showed Fain the items she wanted destroyed in the fire.

About two weeks before the fire, Robert DeMier met with Androus at the delicatessen. He showed Androus the way to gain access to and maneuver inside the building in order to circumvent the burglar alarms. He pointed out the items he wanted destroyed and told Androus he wanted the incident to appear as a burglary and fire.

In the early morning hours of July 30, 1977, Fain, Androus and a Miss Guillemot went to the delicatessen, and Fain set the fire which destroyed the building and its contents. That evening, appellants gave a party, attended by Fain, Androus and one Bridgeman.

On July 31, appellants made a claim against their insurer for their loss sustained as a result of the fire. The insurer ultimately paid them a total of $86,000 on their claim.

Several days after the fire, Androus went to the DeMier house to collect the balance of $1,500.00 due for the setting of the fire. Barbara refused to pay, saying she was not satisfied with the results. Later, Robert DeMier gave Androus two .38 caliber derringers, which Androus gave to Fain and Fain gave to Miss Guillemot. She, at Fain's direction, then sold one derringer to A. Picaro and Associates, which she and Fain believed to be a fencing operation, but which was actually a law enforcement anti-fencing (sting) operation conducted jointly by the Bureau of Alcohol, Tobacco and Firearms (ATF) and the Kansas City, Missouri, Police Department.

In December, 1977, an ATF agent was assigned to trace the ownership of the derringer sold to "Big John" (Agent Keating) of Picaro and Associates by Miss Guillemot. In doing the trace, the agent on December 13 contacted the DeMiers, since Robert was the last record owner of the gun. The agent identified himself as an ATF agent and advised appellants he was conducting a gun trace. Shortly thereafter, Robert DeMier called Androus to warn him of the

---

1. The Honorable John W. Oliver, Chief Judge for the Western District of Missouri.

ATF gun trace, and Androus then called Fain to warn him. Fain, still believing Picaro and Associates was a fencing operation on December 14 called "Big John" (Agent Keating) to warn him of the ATF gun trace. The next day, December 15, 1977, an ATF agent recovered from Robert DeMier, DeMier's dealer's firearm acquisition and disposition record. The entry in the record corresponding with the derringer purchased by Picaro Associates from Miss Guillemot read, "Stolen 7–30–77. Fire."

## SPECIFIC INTENT TO DEFRAUD

■ To establish mail fraud (18 U.S.C. § 1341), the government must prove a scheme to defraud, and the mailing of a letter or other document for the purpose of executing the scheme. *United States v. Brown*, 540 F.2d 364 (8th Cir. 1976). The word "scheme" connotes some degree of planning by the perpetrator, and thus it must be proved that a defendant acted with an intent to defraud. *United States v. Fuel*, 583 F.2d 978 (8th Cir. 1978); *United States v. Brown, supra.* Appellants urge that the evidence at trial was insufficient to establish that they acted with a specific intent to defraud.

Barbara DeMier testified that the insurer verified the total loss by fire to be $143,000.00, but paid only the policy limit of $80,000.00, plus $6,000.00 under the business interruption coverage. Appellants offered evidence showing profit from the business of $1,900.00 in January, $2,300.00 in April, and $3,250.00 in July, 1977. Defendants lost, rather than profited by the fire, they argue, and thus did not obtain money or property as required by 18 U.S.C. § 1341.

■ It is not necessary in a mail fraud prosecution to show that a defendant profited from his scheme. *United States v.*

*Gaskill*, 491 F.2d 981, 984, n.5 (8th Cir. 1974). "It is enough if [the defendant is] actuated by an intention to defraud the persons to whom the false statements are made." *Calnay v. United States*, 1 F.2d 926, 927 (9th Cir. 1924). Intent to defraud may be inferred from all the facts and circumstances surrounding defendants' actions. *United States v. Fuel, supra.* Here, there was ample evidence from which the jury could reasonably infer a specific intent to defraud on the part of both appellants.

(Upon cross examination) Robert DeMier testified that he purchased the business in 1975 for $20,000, and that by the end of the 1976 tax year, as a result of loans, the business owed him almost $42,000 and his wife, Barbara, $12,500. He received only $1,300 in compensation from the business in 1976, the last full business year before the July, 1977, fire. Their employees testified that appellants voiced numerous complaints about the business, including the long hours, the leaky roof, the walk-in cooler, and the landlord. Androus and Fain testified that Barbara DeMier several times before the fire expressed an interest in opening and operating a massage parlor, and witness Bridgeman testified she discussed the subject with him at the party at DeMiers the night after the fire.

The evidence that the delicatessen was unprofitable, and that the defendants were unsatisfied and wanted to get out, was relevant to intent, as was the evidence that defendants hired Androus and Fain to set fire to the premises,[2] after which defendants immediately claimed payment for the property destroyed in the fire.

■ On appeal, the evidence at trial must be viewed in the light most favorable to the jury's verdict, accepting all reasonable inferences tending to support that ver-

---

**2.** Defendants denied ever seeing Fain before the trial, but Bridgeman, (a beer company vice-president and acquaintance of appellants) testified on rebuttal that Barbara introduced him to Fain and Androus at the party the night after the fire. The fact that Robert DeMier immediately warned Androus of the ATF gun trace, and that Androus then promptly warned Fain, who then called agent Keating, tends to

impeach Robert DeMier's denial of any participation in a scheme with Androus and Fain. It was, of course, the function of the jury to resolve conflicts in the testimony and to determine the credibility of the witnesses and the weight of the evidence. *United States v. Hemphill*, 544 F.2d 341 (8th Cir. 1976), *cert. den.* 430 U.S. 967, 97 S.Ct. 1648, 52 L.Ed.2d 358 (1977).

dict. *United States v. Lambros*, 564 F.2d 26 (8th Cir. 1977) *cert. denied*, 434 U.S. 1074, 98 S.Ct. 1262, 55 L.Ed.2d 505 (1978). The implicit finding of the jury that defendants specifically intended to defraud is supported by substantial, direct and circumstantial evidence, and must therefore be sustained on appeal. *United States v. Lambros, supra.*

## MULTIPLICITY

Appellant Robert DeMier argues that the gist of all the counts against him, both mail fraud and making a false entry in a firearms record, was his alleged scheme to defraud the insurance company, basing this position on the fact that part of the insurance payment was for the gun. According to this argument, "The same evidence is required to prove the first eight counts as the ninth, namely, intent to defraud." Therefore, Robert DeMier should have been charged with either mail fraud or the gun record violation, but not both.

■ Appellants' argument bypasses the fundamental question of whether either the mail fraud charge or the gun record charge requires proof of a fact not required in the proof of the other offense. Offenses are considered separate, and therefore not multiplicitous, if each requires proof of a fact not common to the others. *Ianelli v. United States*, 420 U.S. 770, 785, n.17, 95 S.Ct. 1284, 1293, n.17, 43 L.Ed.2d 616 (1975). Appellant ignores the congressional purpose behind the passage of 18 U.S.C. § 922(m). This statute was enacted to regulate firearms trafficking in interstate commerce, 1968 U.S.Code Cong. and Admin.News, pp. 2112–2114, 4410–4415, not as merely a restatement of the mail fraud statute designed to "trip up" gun dealers who falsely claim their merchandise to have been stolen. Thus, the elements of the gun record violation substantially differ from the elements required to prove mail fraud.

On this appeal, appellants make no objection to the jury instructions of the trial court concerning the elements of mail fraud and the elements of the gun record violation. The court properly instructed the jury that the essential elements required to be proved to establish the mail fraud offenses were: (1) The act or acts of having devised or having intended to devise a scheme or artifice to defraud or to attempt to defraud American Family Insurance Company out of money incident to the insurance claim filed in connection with the destruction and loss by fire of Bob's Party Shop and Deli as charged in the information; (2) the act or acts of placing or causing to be placed in an authorized depository for mail matter a letter intended to be delivered by the Postal Service as charged; and (3) the act or acts of so using or causing to use the United States mail willfully and with the specific intent to carry out some essential step in the execution of said scheme or artifice to defraud or to attempt to do so as charged.

Regarding the gun record violation in Count IX, the trial court instructed the jury that there were four essential elements to be proved: (1) The act or acts of making a false entry in the bound firearms acquisition and disposition record; (2) that the bound firearms acquisition and disposition record in which the false entry was made was required to be kept pursuant to law; (3) that the act or acts of making the entry was done willfully and with knowledge that such entry was false; and (4) that the corporation of which Robert DeMier was president was a licensed dealer in firearms.

■ As shown, there is a marked disparity between the elements required to be proved to establish a violation of 18 U.S.C. § 1341 as compared with the proof required under 18 U.S.C. § 922(m). Proof of the elements of one offense would not, standing alone, support conviction of the other offense. This court has held that "separate offenses may arise out of the same act provided each offense requires proof of at least one different element." *United States v. Gardner*, 579 F.2d 474, 476 (8th Cir. 1978), *see Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The dangers of multiplicity, "the charging of a single offense in several counts," *United States v. Starks*, 515 F.2d 112, 116, n.5 (3d Cir. 1975) thus did not arise

for appellant when he was charged simultaneously with violations of both § 1341 and § 922(m).

## CO–CONSPIRATOR STATEMENTS

Appellants claim error in the admission of out of court statements of Androus and Fain, under the co-conspirator exception to the hearsay rule, *Fed.R.Evid.* 801(d)(2)(E). Appellants urge that the statements were inadmissible because a conspiracy was not found *by the jury* from independent evidence, *beyond a reasonable doubt.*

█ *United States v. Bell,* 573 F.2d 1040 (8th Cir. 1978) requires that before an out of court declaration of a co-conspirator may be admitted against a defendant, the government must prove that: (1) A conspiracy existed; (2) the defendant and the declarant were members of the conspiracy; and (3) the declaration was made during the course and in furtherance of the conspiracy. The trial court, not the jury, determines whether the proof is sufficient to admit the co-conspirator declaration under *Fed.R. Evid.* 801(d)(2)(E) and the standard is not proof beyond a reasonable doubt, but instead, the trial court need be satisfied only that "it is more likely than not that the statement was made during the course and in furtherance of an illegal association to which the declarant and the defendant were parties." *Bell, supra* at 1044.

█ In this case, the trial court, in chambers, heard the testimony of Androus that pursuant to Barbara DeMier's request that he find an arsonist to burn the premises, he procured Fain, who agreed to set the fire. Androus also testified as to specific conversations he had with each appellant, and with Fain, concerning the understandings and arrangements for the contracted arson. The trial court also considered the stipulated evidence by which the parties agreed that Robert DeMier owned and operated the delicatessen, that the business was insured, that as a result of a fire in the premises on July 30, 1977, appellants filed an insurance claim and were paid $86,000, and that Robert DeMier, a licensed gun dealer, entered in a firearm disposition record he maintained pursuant to law a notation that a .38 caliber derringer had been stolen in the fire. Upon the evidence before him, the trial court ruled that the out of court statements of Androus and Fain were admissible under *Fed.R.Evid.* 801(d)(2)(E). The procedure followed by the trial court was that contemplated in *United States v. Bell, supra.* Upon the evidence before him, the trial court was entitled to find that it was "more likely than not" that: (1) A conspiracy existed; (2) that each appellant, and Androus, Fain and Guillemot, were members of the conspiracy; and (3) the conversations to which Androus testified were held during the course and in furtherance of the conspiracy. We find no error in the ruling of the trial court.

## PERJURED TESTIMONY

Appellants argue that one of the government's chief witnesses, Androus, committed perjury on the witness stand, and that the government made knowing use of this perjured testimony. This is based on appellant's assertion that Androus testified that Robert DeMier warned him of the ATF gun trace in August, 1977, when, in fact, the DeMiers were not notified of the trace until December, 1977.

Androus admitted he had testified to the grand jury that he last talked to the DeMiers in August, 1977. However, Androus went on to testify that his grand jury testimony was in error, and that to his best recollection, the warning call from Robert DeMier came in December, and that he recalled it as being in December because it was around Christmas time. The jury were entitled to believe his explanation, (which was consistent with testimony of other witnesses as to the date agent Keating received the warning call from Fain). Certainly, the jury could reasonably understand from the whole trial testimony of Androus that he was *not* saying the warning call from DeMier came in August, but instead that his best recollection was that it came in December.

■ Appellants' claim of error under this heading is completely unsupported by the record and is, indeed, close to frivolous.

Appellants contend the trial court should have granted their motion for a judgment of acquittal. They present nothing to support this contention not already considered and resolved against them on this appeal.

The judgments appealed from are affirmed.