UNITED STATES of America, Appellee,

v.

Albert Rolland BASSLER, Appellant.

UNITED STATES of America, Appellee,

v.

George Robert GLOVER, Appellant.

UNITED STATES of America, Appellee,

v.

Wayne Wesley SPRECHER, Appellant.

Nos. 80–1606 to 80–1608.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1980.

Decided June 18, 1981.

Rehearing and Rehearing En Banc Denied
July 27, 1981.

John M. Heckel, Cedar Rapids, Iowa, Atty. at Law, for appellant Albert Rolland Bassler.

James H. Reynolds, U. S. Atty., Cedar Rapids, Iowa, for appellee.

William F. Olinger, Cedar Rapids, Iowa, for appellant.

Hines, Pence, Day & Powers, James M. Powers, Cedar Rapids, Iowa, for appellant Wayne Wesley Sprecher.

Before BRIGHT and STEPHENSON, Circuit Judges, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

Defendants were indicted on 44 counts of mail and wire fraud, aiding and abetting therein, and conspiracy to commit mail and wire fraud. *See* 18 U.S.C. §§ 2, 371, 1341, 1343. Following a lengthy trial to a jury, defendant Bassler was convicted on 43 counts, defendant Glover on 22 counts, and defendant Sprecher on 20 counts. After motions for a new trial were filed, the district court[1] held a hearing concerning defendants' allegations of juror misconduct, based on counsel's discovery that the jury foreperson had taken notes during trial contrary to the court's instructions. The district court denied defendants' motions for a new trial and defendants appeal. We affirm.

Defendants were charged with setting up an advance fee scheme involving the sale of farm buildings. Specifically, the indictment alleged that the defendants, through certain businesses known as Central States Clear Span Sales Company, Inc., and DAG Clear Span Construction Company, Inc., fraudulently induced customers into the purchase of farm buildings. Defendants had a supply agreement with a manufacturer of pre-engineered steel buildings, American Buildings Company, and between May and December, 1978, sold approximately 50 to 60 buildings. A significant number of these buildings were never completed, delivered, or ordered.

On appeal, defendants argue for reversal on three separate grounds. First, and principally, defendants' contend that misconduct on the part of the jury foreperson prejudiced their case and deprived them of their sixth amendment right to a fair trial. The misconduct defendants complain of consists of the jury foreperson taking testimonial notes, contrary to the court's instruction, and notes on a book not in evidence, and the use of these notes by the juror during jury deliberations. Second, defendants attack the trial court's refusal to read a portion of the trial transcript to the jury in response to a question posed by the jury during deliberations.[2] Finally, defendants argue that there was a lack of substantial evidence to support the verdict.

## I. *Juror Misconduct*

■ Subsequent to the return of the jury verdict, counsel for the defendants interviewed certain members of the jury and learned that the jury foreperson, Mrs. Bertha Koppenhaver, had made notes at the end of each trial day of her recollections of the trial testimony. Juror Koppenhaver also took notes on Roberts Rules of Order, taken from a book written about jury duty borrowed by her from a library and not in evidence. The taking of the testimonial notes was contrary to the district court's opening-of-trial instructions to the jurors

---

* The Honorable Earl R. Larson, United States Senior District Judge, District of Minnesota, sitting by designation.

1. The Honorable Edward J. McManus, Chief Judge, United States District Court, Northern District of Iowa.

2. Defendant Sprecher did not raise this issue in his appeal.

not to take notes during trial.[3] At the hearing held on defendants' motions for a new trial, juror Koppenhaver testified that she understood the instructions to mean that no notes should be taken during the actual trial time but could be taken during recess or other times outside actual trial time. These testimonial notes and the procedural notes from the book on jury duty were taken by juror Koppenhaver into the jury room and referred to during the jury's deliberations. Further, matters from the book were orally presented to the jury during the deliberations.

A distinction may be drawn between extrinsic or extraneous influences and intrinsic influences on the jury's deliberations. See United States v. Winters, 434 F.Supp. 1181, 1186 (N.D.Ind.1977), aff'd, 582 F.2d 1152 (7th Cir.), cert. denied, 439 U.S. 936, 99 S.Ct. 333, 50 L.Ed.2d 332 (1978). Extrinsic or extraneous influences include publicity received and discussed in the jury room, matters considered by the jury but not admitted into evidence, and communications or other contact between jurors and outside persons. Extrinsic or extraneous influences may be grounds for impeaching a verdict. Intrinsic influences include discussions and even intimidation or harassment among jurors. Intrinsic influences on a jury's verdict are not competent to impeach a verdict.

We agree with the district court, in its order denying defendants' motions for a new trial, that juror Koppenhaver's testimonial notes were intrinsic to the jury's deliberations and not prejudicial to defendants. A similar situation arose in Winters where a juror prepared notes summarizing the trial evidence that were used during jury deliberations. The Winters court held categorically that these notes did not constitute an extraneous influence on the jury. 434 F.Supp. at 1186. This Court is not persuaded by defendants' attempt to distinguish Winters on the basis that the notes in Winters were prepared inside the jury room. The testimonial notes taken by juror Koppenhaver were notes only of what she heard at trial,[4] she did not discuss these notes with her husband at home nor with anyone else not connected with the trial.[5] While these notes were made known to the jury[6] and were referred to several times,[7] the other members of the jury never read the notes themselves.[8] This type of intrinsic influence is not error sufficient for impeachment of the verdict.

Juror Koppenhaver's notes from the book on jury duty not in evidence, on the other hand, constitute an extrinsic influence on the jury's deliberation. The question before us is whether the jury's exposure to this extrinsic material is prejudicial error requiring the setting aside of the jury's

**3.** It is undisputed that the decision on whether to allow jurors to take testimonial notes is left to the sound discretion of the trial court. See United States v. Maclean, 578 F.2d 64 (3d Cir. 1978); United States v. Bertolotti, 529 F.2d 149 (2d Cir. 1975); Goodloe v. United States, 188 F.2d 621 (D.C.Cir.1950), cert. denied, 342 U.S. 819 (1951), 72 S.Ct. 35, 96 L.Ed. 619; 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 5.08 (3d ed. 1977). The arguments for and against allowing jurors to take testimonial notes have often been discussed. See, e. g., United States v. Maclean, 578 F.2d at 66, 1 E. Devitt & C. Blackmar, supra; Parry, Taking Note of Note-Taking, 10 Colum.J.L. & Soc.Prob. 565, 574–80 (1974). Of principal concern is the feeling that the best notetaker, or the only notetaker, may dominate jury deliberations. Other expressed concerns are that note-taking will distract jurors from hearing all the testimony or paying sufficient attention to the demeanor of witnesses and

that jurors attach too much significance to their notes and too little significance to their own independent memory. In favor of allowing jurors to take notes is the argument that note-taking is a valuable method of refreshing memory. Note-taking may also concentrate the juror's attention on the proceedings and help their attention from wandering. Since attorneys and judges are allowed to take notes, it has been asked why shouldn't the jurors also be allowed to take notes?

**4.** Transcript of Hearing Re Jury Deliberations, May 22, 1980, at 24.

**5.** Id. at 13–14.

**6.** Id. at 14, 39–40.

**7.** Id. at 14–15.

**8.** Id. at 49, 50.

verdict. In its hearing on the matter, the district court properly followed the dictates of Federal Rule of Evidence 606(b) by preventing any examination into the effect that this extrinsic material had on the mental processes of the jurors. *See United States v. Vasquez*, 597 F.2d 192, 194 (9th Cir. 1979); *United States v. Howard*, 506 F.2d 865, 869 (5th Cir. 1975). Because Rule 606(b) precludes the district court from investigating the subjective effects of any extrinsic material on the jurors, whether such effects might be shown to affirm or negate the conclusion of actual prejudice, a presumption of prejudice is created and the burden is on the government to prove harmlessness. *See Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954); *United States v. Howard*, 506 F.2d at 869; *United States v. Winters*, 434 F.Supp. at 1186. The strength of the government's case, however, has a bearing on the issue of prejudicial error. *Osborne v. United States*, 351 F.2d 111, 118 (8th Cir. 1965). Defendants and the government disagree on the proper test to be applied to determine whether reversal is required. The government argues that the proper standard is that if "the error did not influence the jury or had but a very slight effect," the verdict and the judgment should stand. *See id.* at 117. Defendants argue that the proper test is whether there is or is not a "reasonable possibility" that the extrinsic material affected the jury's verdict. *See United States v. Vasquez*, 597 F.2d at 193; *United States v. Howard*, 506 F.2d at 869; *Braswell v. United States*, 200 F.2d 597, 602 (5th Cir. 1952). Assuming, *arguendo*, the propriety of the test preferred by defendants, this court is convinced that no prejudicial error exists.

Juror Koppenhaver testified that she used her notes from the book on jury duty for procedural purposes.[9] The notes were used to outline a method of procedure by which the jury could have reasonable discussions of divergent points of view and

still keep the discussions orderly.[10] A review of the testimony of juror Laura Peirsall at the hearing on this matter does not establish that these notes were used for other than procedural purposes.[11] The same can be said for the oral comments that juror Koppenhaver made about the book without making direct references to her notes.[12] Again, we agree with the district court that the use of these "procedural" notes, and oral "procedural" comments, during jury deliberations were not prejudicial to defendants. Their use aided the jury in being conscientious and serious in attempting to deliberate in a fair and impartial manner.

## II. *Refusal to Read Testimony to Jury*

The decision to read testimony requested by the jury rests within the sound discretion of the trial judge. *United States v. Peltier*, 585 F.2d 314, 334 (8th Cir. 1978), *cert. denied*, 440 U.S. 945, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979); *United States v. Jackson*, 257 F.2d 41, 43 (3d Cir. 1958). Only if it can be demonstrated that the failure to permit the reading of requested testimony created unfairness to the defendant is the defendant entitled to have the jury informed as a matter of right. *United States v. Jackson*, 257 F.2d at 43.

After deliberations had begun in the present case, the jury requested that it be allowed to review the transcript of testimony of employees of American Building Company in regard to the involvement of the defendants in the operations of Central States Clear Span Sales Company on certain dates. Defendant Glover admits that the request was not altogether clear or precise and the trial court stated that it could not decide with any certainty what portions of the transcript should have been isolated so that the jurors' question could have been correctly answered. Glover argues that the request was easily satisfiable and not ad-

---

**9.** Transcript of Hearing Re Jury Deliberations, May 22, 1980, at 18–20, 25–27.

**10.** *Id.* at 26–27.

**11.** *Id.* at 42–48.

**12.** *Id.* at 49–51; *see id.* at 19–20, 25–27.

ministratively burdensome; unlike cases where the trial court's discretionary denial was affirmed because the jury's request was for large quantities of transcribed testimony, *see United States v. Rice*, 550 F.2d 1364 (5th Cir.), *cert. denied*, 434 U.S. 954, 98 S.Ct. 478, 54 L.Ed.2d 312 (1977); *United States v. Morrow*, 537 F.2d 120 (5th Cir. 1976). The trial court believed, and we agree, that the request required providing the jurors with the transcript of all the testimony—virtually an impossibility since the testimony had not yet been transcribed and extended over a period of ten trial days. Furthermore, the testimony requested was that of government witnesses favorable to the government and not defendants. This Court concludes that the trial court's refusal to read testimony to the jury was not an abuse of discretion and did not create unfairness to the defendants.[13]

### III. *Sufficiency of the Evidence*

In reviewing defendants' contention that there was a lack of substantial evidence to support the verdict, the evidence at trial must be viewed in the light most favorable to the jury's verdict, accepting all reasonable inferences tending to support that verdict. *DeMier v. United States*, 616 F.2d 366, 369–70 (8th Cir. 1980). The thrust of defendants' argument on this issue is that the government failed to present sufficient evidence of intent to defraud. While the government must establish beyond a reasonable doubt that the defendants acted with an intent to defraud, direct evidence of intent is not required. The requisite intent may be inferred from all the facts and circumstances surrounding defendants' actions. *United States v. Fuel*, 583 F.2d 978, 983 (8th Cir. 1978).

As defendant Bassler concedes, the volume of the government's evidence seems to make an argument on this point impossible. The government called over 40 witnesses with approximately eight days of testimony. There was sufficient evidence

to establish the government's position that the management of the business was performed in a manner indicating an intent to defraud rather than the defendants' position that it was just chaos due to inexperience and innocent mismanagement. There was also sufficient evidence to show that the handling of the money deposits of defendants' customers was such as to exhibit an attempt to defraud them rather than showing mere poor accounting, bookkeeping, and banking transactions. The evidence was sufficient to show that the actions of these defendants were more a lulling of defendants' customers than good faith attempts to fulfill the purchase agreements.

Defendants argue that their lack of intent to defraud is evidenced by the fact that none of them profited greatly from the business. There was some evidence that defendant Sprecher put more money into the business than he received out. It is not necessary, however, to show that defendants profited from their scheme. *See De-Mier v. United States*, 616 F.2d at 369; *United States v. Gaskill*, 491 F.2d 981, 984 n.5 (8th Cir. 1974). Moreover, with regard to defendant Sprecher, one may draw the reasonable inference that Sprecher put his money into the business to save himself from the threats of his unpaid employees rather than in a good faith attempt to save the business.

The judgments of conviction are affirmed.

---

**13.** Only defendant Glover can be heard to complain on this ground. Defendant Sprecher did not raise this issue in his appeal and defendant

Bassler waived his right to appeal by resisting the reading of the testimony at the time of the jury's request.