35 F.3d 571
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Ricky HUGHES, et al., Plaintiffs-Appellees,
and
Aetna Casualty & Surety Company, Plaintiff-Intervenor-Appellee,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellant.
 Nos. 93-15174, 93-15298.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 9, 1994.
Submission Vacated May 16, 1994.
Resubmitted June 17, 1994.
Decided Sept. 8, 1994.
 
 1
 Before: POOLE and REINHARDT, Circuit Judges, and TAKASUGI,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 General Motors appeals from an adverse jury verdict in a diversity action brought by Ricky Hughes. Hughes, who was rendered quadriplegic in a rollover accident while driving a G.M. pickup truck, alleged that the truck was defective in design and that the company was negligent in designing it. The jury found G.M. liable on both theories and found that Hughes had suffered $11,847,389.13 in damages. It reduced this award by 40% to account for Hughes's comparative fault. On appeal, General Motors challenges the jury instructions on design defect, several alleged incidents of juror misconduct, and the size of the jury's economic damage award. We affirm.
 
 1. Instruction on Design Defect
 
 4
 The district court instructed the jury that it could find a design defect in Hughes's pickup truck on the basis of either of two alternate theories: the consumer expectation test or the risk-benefit test.[1] General Motors claims that the district court erred in submitting the consumer expectation theory to the jury. We find it unnecessary to reach this claim, because any error in the instructions on design defect was harmless. In a special verdict, the jury expressly found liability on two independent bases: strict liability and negligence. Even if the district court improperly instructed the jury on the strict liability theory, the jury's express adoption of the independent negligence theory is sufficient to support the judgment. See, e.g., Taylor v. Burlington Northern R. Co., 787 F.2d 1309, 1314-15 (9th Cir.1986); Bradshaw v. Freightliner Corp., 937 F.2d 197, 203 (5th Cir.1991).
 
 
 5
 General Motors argues that the jury's negligence finding is insufficient to support the judgment. The company contends that the jury's negligence finding is dependent on its strict liability finding because "negligent failure to test or design is not a basis for liability unless the failure results in a defect." We reject this argument.
 
 
 6
 The jury's finding of negligence in this case was not tainted by any erroneous instruction on defect. The negligence instructions did not require the jury to find a "defect" under product liability law in order to find that General Motors was negligent. These instructions did not even mention the word "defect." They referred only to the failure to exercise reasonable care. Even if the instructions on defect were erroneous, they could not have affected the jury's decision on negligence.
 
 
 7
 Further, the instructions on negligence accurately stated the law and accurately informed the jurors of the elements they were required to find. A jury need not make an explicit determination that a "defect" exists under products liability law in order to find a defendant liable for negligent product design and testing. The California Supreme Court has made clear that the test for determining whether a product contains a design defect is distinct from and independent of the test for determining whether the manufacturer was negligent in designing the product, even though "in many case proof that a product is defective in design may also demonstrate that the manufacturer was negligent in choosing such a design." Barker v. Lull Engineering Co., 573 P.2d 443, 457 (Cal.1978). General Motors cites no case which holds that a jury must explicitly find the existence of a "defect" under products liability law in order to find that the manufacturer was negligent, and we are unable to discover one.[2] This is not surprising, because such a holding would appear to be clearly inconsistent with Barker. Furthermore, we note that the Fifth Circuit has recently held in an almost identical case that a jury finding of negligence was sufficient to support the judgment of liability, even if the district court's instructions on defect were erroneous. See Bradshaw, 937 F.2d at 202. Because General Motors has directed us to no precedent which contradicts the straightforward reading of Barker that is confirmed by Bradshaw, we conclude that any error in giving the consumer expectation instruction was harmless.
 
 2. The Size of Economic Damages
 
 8
 The jury concluded that Hughes had suffered $7,110,449.00 in economic damages, excluding past medical expenses. The verdict as to economic damages was a general verdict; the court did not ask the jury to itemize the bases for its finding. General Motors argues that the evidence presented at trial supports a finding of only $6,148,259 in economic damages. It requests a remittitur of $962,190. We reject this claim.
 
 
 9
 We will disturb a damages award only if it is "clearly unsupported by the evidence." Hasbrouck v. Texaco, Inc., 842 F.2d 1034, 1044 (9th Cir.1988), aff'd 496 U.S. 543 (1990). "An otherwise supportable damage verdict will be affirmed unless it is 'grossly excessive' or 'shocking to the conscience.' " Id. (quoting Chalmers v. City of Los Angeles, 762 F.2d 753, 760 (9th Cir.1985). Cf. MCI Communications v. American Telephone & Telegraph, 708 F.2d 1081, 1161 (7th Cir.) ("Once causation of damages has been established, the amount of damages may be determined by a just and reasonable estimate as long as the jury verdict is not the product of speculation or guess work."), cert. denied, 464 U.S. 891 (1983). General Motors has utterly failed to demonstrate that the damages award violates this standard. The corporation's calculation is based on damages estimates which assume that Hughes's life expectancy was 27.52 years. In fact, based on the evidence at trial and the jury instructions (which the company does not contest), the jury could have concluded that Hughes had a life expectancy of at least 34.935 years. If it had made the latter finding, the jury could have awarded an even larger amount of economic damages than it did. The damages verdict was not "clearly unsupported by the evidence," "grossly excessive," or "shocking to the conscience."
 
 3. Alleged Juror Misconduct
 
 10
 Relying on a declaration it obtained from one of the jurors (Kristi Benoy) following the trial, General Motors alleges that the jury committed misconduct by considering prejudicial extrinsic material. The company argues that the district court should have ordered a new trial or, at a minimum, an evidentiary hearing on the basis of these allegations. We review for abuse of discretion the district court's ultimate decision regarding whether to grant a new trial in a civil case. See Hard v. Burlington Northern R.R. (Hard I), 812 F.2d 482, 483 (9th Cir.1987). This standard of review also applies to "the trial court's choice of procedures for investigating allegations of juror misconduct--for example, whether to conduct an evidentiary hearing, or whether to subpoena jurors." Hard v. Burlington Northern R. Co. (Hard II), 870 F.2d 1454, 1462 (9th Cir.1989). We conclude that in this case the district court did not abuse its discretion in refusing to grant a new trial or an evidentiary hearing on General Motors's allegations.
 
 
 11
 (a) The Rolled-Up Paper Demonstration--Benoy's declaration stated that one of the jurors, Earlinor Odom, performed during deliberations a demonstration which involved cutting a hole in a piece of paper, rolling it up into a cylinder, and pressing down on its top. General Motors claims that this demonstration was an impermissible juror experiment which brought extrinsic material before the jury. The district court rejected this claim, and we conclude that it did not abuse its discretion.
 
 
 12
 Although jurors may not go beyond the record to develop their own evidence, they are entitled to evaluate the evidence presented at trial in light of their own experience. As we emphasized in Hard II, "[t]he type of after-acquired information that potentially taints a jury verdict should be carefully distinguished from the general knowledge, opinions, feelings, and bias that every juror carries into the jury room." Hard II, 870 F.2d at 1461. See also United States v. Navarro-Garcia, 926 F.2d 818, 822 (9th Cir.1991) ("[P]ersonal experiences are relevant only for purposes of interpreting the record evidence."). Like personal experiences, other aids in interpreting and explaining the evidence are permissible, so long as they do not introduce facts outside of the record. See, e.g., United States v. Bassler, 651 F.2d 600, 602 (8th Cir.), certs. denied, 454 U.S. 944 (1981), 454 U.S. 1151 (1982).[3] See also United States v. Hephner, 410 F.2d 930, 936 (7th Cir.1969) ("Jurors must be given enough latitude in their deliberations to permit them to use common experience and illustrations in reaching their verdict.").
 
 
 13
 These cases draw a line between impermissible "extrinsic" influences on jury deliberations and permissible "intrinsic" influences. The district court found that Odom's actions with the rolled-up piece of paper fell on the permissible, "intrinsic" side of that line. It found that the use of the rolled-up paper was simply "graphic speech"--a "demonstration" which served to illustrate the theory Odom was advocating and to explain her point of view. We discern no error in this finding. Accordingly, we see no reason to hold an evidentiary hearing on this claim.
 
 
 14
 (b) Turrell's Daughter's Accident--We reach a similar conclusion with respect to General Motors' allegation that another juror, Patricia Turrell, introduced extrinsic information by discussing a rollover accident which had involved her daughter. Even if the allegations in Benoy's declaration are taken as true, General Motors cannot demonstrate that the discussion of Turrell's daughter's accident caused sufficient prejudice to warrant a new trial.
 
 
 15
 The district court did not err in concluding that Turrell's discussion of her daughter's accident, even if it took place, could not have caused prejudice to the corporation. As the district court noted, the facts underlying Turrell's daughter's accident were so distinct from those of the present case that it is highly unlikely that any rational juror would have considered them relevant. Turrell's daughter's accident occurred at a different time and place, under different conditions, and in a different type of vehicle than Hughes's. The accident thus gave Turrell little basis to prejudge the issues involved in Hughes's case.[4] General Motors correctly argues that these differences would make the prior accident inadmissible at trial. However, that argument does not advance the company's cause. In order to be admissible, evidence must be relevant; the closer the facts of a prior accident are to the ones at issue in the case at trial, the more relevant these facts are. Indeed, "facts specific to the litigation" are the most relevant, and, more important here, the most likely to cause prejudice when a juror gains independent knowledge of them. See Hard II, 870 F.2d at 1462. The contrary is also true. The less relevant the facts, the less likely they are to influence the jury. Here, as General Motors points out, the facts were entirely irrelevant. Thus, they were most unlikely to affect the jury's deliberations.
 
 
 16
 Moreover, five jurors (including the foreperson and Turrell) stated that, after Turrell brought up her daughter's accident, the foreperson told the members of the jury that they were not to consider it. Benoy's declaration did not dispute this point. The district court relied heavily on the foreperson's admonition in concluding that Turrell's actions were not prejudicial. An evidentiary hearing would likely uncover no more information, because Fed.R.Evid. 606(b) would prohibit the jurors from testifying regarding whether they followed this admonition. Accordingly, we conclude that the district court did not abuse its discretion in refusing to grant a new trial or hold an evidentiary hearing on this issue.
 
 
 17
 (c) The Television Program--Finally, General Motors claims that, during trial, two jurors viewed a television program involving allegations of defects in G.M. pickup trucks. According to Benoy's declaration:
 
 
 18
 Sometime during the course of trial, approximately during the second week, a fellow juror announced and discussed a television show she had watched during the course of the trial which involved allegations that General Motors pickups are defective. At least one other jury member also admitted watching the same show.
 
 
 19
 In response, Hughes offered the declarations of five of the jurors, who stated that they had not seen any such television program during the trial, that nobody had mentioned any such program during deliberations, and that they had not heard anyone discuss such a program during the trial. Three of the nine jurors did not provide declarations to either party.
 
 
 20
 The district court refused to hold an evidentiary hearing regarding the allegations that members of the jury viewed a prejudicial television program during trial, and it refused to order a new trial on this basis. The district court reasoned:
 
 
 21
 Relative to the assertion that there was some consideration of some TV show unspecified, foundationally undocumented, no indication evidentiarily other than the conclusion of Ms. Benoy, the motion is denied. We don't know which one it is, if there was one.
 
 
 22
 We conclude that the district court did not abuse its discretion in refusing to order a new trial or hold an evidentiary hearing on this issue. General Motors provided only the weakest possible showing that any discussion of a television program took place. The company did not provide any information regarding what television program was discussed, which jurors discussed it, for how long, or what they said about it. If, indeed, jury members discussed a television program, General Motors could easily have obtained more specific information. The company could have obtained this information from Ms. Benoy, or it could have sought declarations from the other jurors, including the three jurors who did not provide declarations to either party. There is no indication in the district court record (such as an affidavit of the company's counsel) that General Motors even attempted to take these steps. In fact, G.M. exhibited a distinct lack of diligence in pursuing this allegation in the district court; as a result, it utterly failed to provide either the district judge or us with anything but Benoy's sketchy, conclusory, uncorroborated assertion.
 
 
 23
 General Motors's brief states that the television program "must have been" an episode of "Inside Edition" which it has submitted to the court. However, the corporation has provided absolutely no foundation for its assertion that the jurors viewed and discussed this program. The only evidentiary submission which mentions the "Inside Edition" episode is a declaration submitted by G.M.'s trial counsel, Harold Parichan, which states: "Attached hereto as Exhibit 'C' is a true and correct copy of a presentation regarding pickups manufactured by General Motors shown as 'Inside Edition' during pendancy [sic ] of trial of the above-captioned matter." This declaration does not state that any of the jurors saw the "Inside Edition" episode, or even that they could have seen it--the declaration does not state that the program (which is nationally syndicated) was shown in the geographic area where the trial was held (Fresno) nor, of course, that it was shown in that location during the course of the trial. Moreover, its reference to the "pendency" of trial suggests that the program may have been shown prior to trial, in which case General Motors should have addressed the issue at jury selection. We believe the district court was absolutely correct in concluding that G.M.'s allegation was "foundationally undocumented."
 
 
 24
 Moreover, we note that if a national television program critical of G.M.'s manufacturing practices was in fact broadcast during trial, the company should have addressed this issue far more promptly, rather than waiting to see what the jury's verdict would be. If, in fact, a national television program alleging that the company had produced defective pickup trucks was shown, we consider it highly unlikely that General Motors would not have known about such a program both before and at the time it aired. Even if we are incorrect, we find it impossible to believe that G.M. did not know about the showing immediately afterwards. Before the program's air date, the corporation could have sought supplemental instructions or even sequestration to ensure that the jury would not become subject to improper influence. Moreover, G.M. could have taken curative measures after the program aired, such as seeking supplemental voir dire, or specific jury instructions regarding the broadcast, both during the course of the trial and in the overall instructions. Yet the company did not take any steps to ensure against juror taint resulting from the broadcast of any television program. Rather, it awaited the jury's verdict and raised the issue of the prejudicial television broadcast for the first time only after the jury had returned a substantial judgment in favor of the plaintiff. The two most logical explanations for General Motors's failure to act sooner are: (1) no television program criticizing General Motors pickups was shown during trial; or (2) General Motors knew of the possibility of jury taint, but decided to hold the argument in reserve in case it lost at trial. G.M.'s conduct strongly supports our conclusion that the district court did not abuse its discretion in refusing to grant a new trial or order a hearing into allegations relating to the television program.
 
 4. Conclusion
 
 25
 The judgment of the district court is AFFIRMED in all respects.
 
 
 26
 POOLE, Circuit Judge, concurring in part and dissenting in part:
 
 
 27
 I am in agreement with the majority's rejection of the bulk of General Motors' claims. I part company only with regard to its treatment of General Motors' request for an evidentiary hearing based on allegations that an outside television program was discussed by jury members during trial. Because I believe an evidentiary hearing was required based on this allegation, I would reverse and remand for an evidentiary hearing on this claim alone.
 
 
 28
 Following the conclusion of trial, General Motors submitted an affidavit from juror Kristi Benoy alleging in part that:
 
 
 29
 Sometime during the course of trial, approximately during the second week, a fellow juror announced and discussed a television show she had watched during the course of the trial which involved allegations that General Motors pickups are defective. At least one other jury member also admitted watching the show.
 
 
 30
 It is true, as the majority notes, that the district court had discretion to shape the procedures used to respond to such allegations. This discretion was far from unlimited, however. Indeed, we have adopted a preference in favor of evidentiary hearings where the circumstances so warrant:
 
 
 31
 While it is not always an abuse of discretion to fail to hold an evidentiary hearing when faced with allegations of juror misconduct, see [United States v.] Langford, 802 F.2d [1176, 1180 (9th Cir.1986) ], it is preferable that a hearing be held, id.; United States v. Halbert, 712 F.2d 388, 389 (9th Cir.1983), cert. denied, 465 U.S. 1005, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984). A court is to be guided by the content of the allegations, the seriousness of the alleged misconduct, and the credibility of the source in determining whether a hearing must be held. United States v. Hendrix, 549 F.2d 1225, 1227-28 (9th Cir.1977) (citation omitted).
 
 
 32
 Hard v. Burlington Northern R.R., 812 F.2d 482, 485 (9th Cir.1987) (Hard I ).
 
 
 33
 Obviously, not all allegations of juror misconduct warrant a hearing; the majority opinion's Secs. 3(a)-3(b) presents two such instances. Allegations, even if true, may be insufficiently serious, or they may be transparently false. Consequently, where affidavits on their face do not make it more likely than not that a different verdict would have been reached, see Hard v. Burlington Northern R.R., 870 F.2d 1454, 1461 (9th Cir.1989) (Hard II ), or where the district court can determine that the allegations are without credibility, see United States v. Navarro-Garcia, 926 F.2d 818, 822 (9th Cir.1991), no evidentiary hearing is necessary.
 
 
 34
 Unlike my colleagues, I do not believe either exception applies to this case. The majority dismisses Benoy's declaration as a "sketchy, conclusory, uncorroborated assertion." What it cannot say is that Benoy's allegation is untrue. Nor does the majority appear to argue that the allegation, if true, is of insufficient moment. In a difficult and closely contested trial such as this one, independent corroboration from a superficially authoritative source that General Motors trucks are in fact defective was likely to be highly prejudicial. I believe Benoy's allegation to involve at least as prejudicial an influence on the jury as the undisclosed employment relationship held to require an evidentiary hearing in Hard I. Accordingly, as in Hard I, I would reverse for an abuse of discretion and remand for an evidentiary hearing.
 
 
 
 *
 Honorable Robert M. Takasugi, United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and my not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 The district court gave the following instruction:
 A product is defective in design if it fails to perform as safely as an ordinary consumer would expect when used in an intended or foreseeable manner, or if there is a risk of danger inherent in the design which outweighs the benefits of that design.
 
 
 [2]
 Lunghi v. Clark Equipment Co., 153 Cal.App.3d 485 (1984), on which General Motors relies, is inapposite. In that case, the court held that the failure to instruct on the issue of negligence is generally harmless when a jury which was instructed on strict liability returns a special verdict finding that there is no defect in the product. Id. at 493. The court did not state that a jury's explicit finding of negligent design must be reversed if the jury failed to make an additional finding that a "defect" existed. The other case cited by General Motors, Putensen v. Clay Adams, Inc., 12 Cal.App.3d 1062 (1970), also did not state that a jury must find a "defect" under strict liability principles in order to find negligent manufacture. Even if it had, it has minimal relevance because it was decided eight years before Barker made clear the distinction between design defect and negligent design
 
 
 [3]
 We cited Bassler with approval in United States v. Bagnariol, 665 F.2d 877, 886 (9th Cir.1981), cert. denied, 456 U.S. 962 (1983)
 
 
 [4]
 Moreover, Turrell truthfully revealed her daughter's accident on voir dire. Cf. Hard I, 870 F.2d at 1461 ("Voir dire questioning is the proper method of uncovering prejudicial character traits of potential jurors."). After learning that Turrell's daughter was not hurt in the accident, General Motors did not seek to strike her for cause