**Thomas J. HARD, Plaintiff–Appellant,**

v.

**BURLINGTON NORTHERN RAILROAD COMPANY, Defendant–Appellee.**

**No. 87–4190.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1988.

Decided March 22, 1989.

**1456**

Joseph P. Hennessey, Hennessey Law Office, Billings, Mont., for plaintiff-appellant.

Charles C. Dearden, Burlington Northern R. Co., Billings, Mont., for defendant-appellee.

Before BROWNING, WALLACE and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Thomas Hard appeals the denial of his motion for a new trial. Hard claims that the district court abused its discretion in denying his motion after it was discovered that a juror failed to disclose his former employment during voir dire questioning. Hard asserts that disclosure of the juror's former employment would have provided a valid basis for a challenge for cause, and that the juror brought extraneous and prejudicial information before the jury, thus denying him a fair trial.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

### I.

*Facts and Proceeding Below*

While washing a locomotive for defendant-appellee Burlington Northern Railroad, Hard slipped and fell on a concrete ramp, allegedly sustaining injuries to his arm, shoulder, neck and back. He brought suit under the Federal Employers' Liability Act, 45 U.S.C. § 51, et seq. (1982), claiming negligence on the part of Burlington Northern. After a jury trial in which substantial conflicting testimony was introduced regarding liability and damages, Hard was found 50% negligent and awarded $5000.

After the trial Hard's attorney discovered that one of the jurors, Donald Fraser, was a former employee of Northern Pacific Railroad, a predecessor of Burlington Northern. Hard's attorney then deposed three of the jurors and filed a motion for a new trial, alleging that Fraser deliberately concealed the identity of his former employer during voir dire and prejudiced the jury by introducing extraneous information into the jury's deliberations regarding the on-the-job personal injury settlement practices of Burlington Northern.[1]

---

1. The following discussion took place between the court and jurors on voir dire:

   THE COURT: Has anybody ever been employed by Burlington Northern Railroad?
   A JUROR: I have just briefly. My grandfather was employed by them, and I worked for them for about three days.
   THE COURT: Is there anything at all in your background or your relationship with Burlington Northern that would prevent you from being a fair and impartial juror?
   A JUROR: No, not that I can think of, no.
   THE COURT: You think you could give both parties a fair trial?
   A JUROR: Yeah, I think so.
   THE COURT: And so in your employment with the railroad, there was nothing that would cause any hard feelings between you and the railroad?
   A JUROR: No, sir.
   THE COURT: You feel that you could provide the same kind of impartial judgment on the

The district court refused to consider the juror affidavits and denied Hard's motion. *Hard v. Burlington Northern Railroad,* 618 F.Supp. 1463, 1468 (D.Mont.1985). Hard appealed, seeking a new trial based on inadequate damages, the verdict being against the weight of the evidence, and juror misconduct. We affirmed on the first two issues and remanded for an evidentiary hearing on the issue of juror misconduct, determining that Fraser's statements constituted evidence of extraneous influence and that testimony as to their occurrence should not have been barred by Federal Rule of Evidence 606(b). *Hard v. Burlington Northern Railroad,* 812 F.2d 482, 486 (9th Cir.1987). On remand the district court admitted the affidavits and conducted an evidentiary hearing at which all of the jurors were available to testify, made findings of fact, and in a well reasoned memorandum again denied Hard's motion for a new trial. Hard appeals.

## II.

### Standard of Review

We review a district court's denial of a motion for a new trial for an abuse of discretion. *Robins v. Harum,* 773 F.2d 1004, 1006 (9th Cir.1985). The reviewing court must consider whether the decision of the lower court "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

## III.

### Discussion

#### A. Timeliness of Appeal

Burlington Northern raises a timeliness issue regarding this appeal and asks this panel to disregard our holding in *Calhoun v. United States,* 647 F.2d 6 (9th Cir.1981), which held that a judgment or order that is not filed on a separate document is ineffective to start the 30–day clock for a timely appeal. The district court filed a "Memorandum and Order" on August 12, 1987 denying Hard's motion for a new trial. Hard filed a notice of appeal 33 days later on September 14, 1987. Rule 4 of the Federal Rules of Appellate Procedure requires civil appeals to be filed within 30 days of the entry of the judgment or order appealed from, and subsection 4(a)(4) provides that the "time for appeal for all par-

---

facts in this case that you would like to have somebody provide in trying your case if you had one?

A JUROR: I think so.

THE COURT: Is there anyone else who has had any kind of a relationship with the parties, the railroad, any of the attorneys or do any of you know any of the witnesses, prospective witnesses who have been named?

\* \* \* \* \* \*

Several prospective jurors were excused, and juror Fraser was called by the clerk to replenish the pool. Fraser was then addressed personally by the court:

THE COURT: Sir, let me ask you kind of a general question to begin with and that is you've been present here in the courtroom. You've heard the questions that have been asked. You've noted the responses or lack of responses from other jurors. I'm going to ask, would your answers or non-answers to those questions have been the same as the other members here who did not respond?

FRASER: They would, sir.

THE COURT: Thank you.

\* \* \* \* \* \*

THE COURT: Has anyone here ever had any dealing of any kind of Burlington Northern?

Anybody ever send anything on their railroad, and as a result of that, have any good feelings or hard feelings? Has anybody ever traveled on the railroad, and for that reason, form some opinion about the railroad, good or bad?

Folks, I have asked you all the questions that I can think about here, and what we're trying to do is just elicit from you any reasons that one of you might not be able to be a fair and impartial juror.

Now, in addition to all the questions that I have asked, do any of you think of anything else that might prevent one of you from being a fair juror? You'll take an oath to fairly and impartially determine the facts between the parties. Is there anyone who can't do that?

Will counsel please come to the bench.

After a brief discussion on the bench, the court continued:

THE COURT: Let's see. Mr. Fraser, I neglected to ask you your occupation and whether you were married and your spouse's occupation if you have one.

FRASER: My wife is Alto Fraser. We're both retired.

THE COURT: You're both retired?

FRASER: Right.

ties shall run from the entry of the order denying a new trial...." A motions panel of this court found the appeal timely and denied the appellee's motion to dismiss under the reasoning of *Calhoun.*

■ While the "law of the case" doctrine prevents reconsideration of issues that have been decided by the court, the merits panel has an independent duty to examine jurisdictional questions. *United States v. Houser,* 804 F.2d 565, 568 (9th Cir.1986); *Malone v. Avenenti,* 850 F.2d 569, 571 (9th Cir.1988). The fact that a prior motions panel has denied a motion to dismiss does not free us from this duty, *Houser,* 804 F.2d at 568; *Malone,* 850 F.2d at 571, because the time for filing an appeal is "mandatory and jurisdictional." *Browder v. Director, Dep't of Corrections,* 434 U.S. 257, 264, 98 S.Ct. 556, 561, 54 L.Ed.2d 521 (1978); *United States v. Robinson,* 361 U.S. 220, 229, 80 S.Ct. 282, 288, 4 L.Ed.2d 259 (1960).

■ We cannot modify *Calhoun* as urged by the appellant. "[T]hree-judge panels of the Ninth Circuit will abide by a prior Ninth Circuit panel decision until either the United States Supreme Court or the Ninth Circuit, sitting en banc, explicitly or implicitly overrules it." *United Scottish Ins. Co. v. United States,* 614 F.2d 188, 191 (9th Cir.1980). We must therefore follow *Calhoun* and mechanically apply the Rules of Civil Procedure. *See Calhoun,* 647 F.2d at 10–11. Rule 58 provides in part: "Every judgment shall be set forth on a separate document." In the present case the order of the district court denying the appellant's motion for a new trial was contained in the last sentence of a nine page memorandum. We agree with the Fourth Circuit that "an order ... tacked onto the end of an opinion, no matter how explicit, simply does not qualify as a separate document for the purpose of evaluating the timeliness of an appeal." *Caperton v. Beatrice Pocahontas Coal Co.,* 585 F.2d 683, 689 (4th Cir. 1978). Consequently, the trial court's order was not entered within the meaning of Rule 4(a)(4), and Hard's appeal was timely filed.

## B. *The Evidentiary Hearing*

The district court held an evidentiary hearing on May 19, 1987. All of the trial jurors were questioned individually by the court regarding their memory of what transpired during jury deliberations. The district court then issued a memorandum and order that contained, *inter alia,* the following findings of fact:

1. Juror Donald William Fraser was employed by the Northern Pacific Railroad for three months in 1935, again in the summer of 1936, and from the summer of 1937 to 1939. In 1945 he worked as a special agent for the county sheriff in the railroad area for a brief period of time. Northern Pacific was a railway company which was acquired by BN years ago, but after Fraser's periods of employment. Fraser never was in the employ of Burlington Northern.

2. Juror Fraser did not intentionally fail to answer honestly a material question during voir dire. Plaintiff did not request, and the Court did not pursue, any inquiry regarding employment with any railroad other than the Burlington Northern, and counsel passed the jury for cause without requesting inquiry into the area of former employment. Juror Fraser's answers were responsive to the Court's questions, and no information was deliberately withheld. Had the Court been apprised fully of Juror Fraser's background, he would not have been subject to a challenge for cause.

3. During the jury's deliberations, Fraser related the fact that during his tenure with the railroad he had dropped a 250-pound jack on his foot, for which he received three weeks' sick leave with pay. The railroad also provided his hospital expenses for a hernia operation.

4. Three fellow jurors testified that Fraser said he had worked in the Livingston, Montana, round-house where plaintiff was injured. Two other jurors had no recollection of any juror having discussed his employment with the railroad.

5. There was inconclusive evidence to show that Fraser attempted to persuade the other jurors that the Burlington

Northern had probably compensated plaintiff for his injuries. The evidence does not support plaintiff's contention that Fraser told the other jurors he was sure the railroad had offered plaintiff a fair settlement.

6. There is insufficient evidence to show that Fraser attempted to influence the jury, based on his alleged familiarity with x-rays, that the x-rays admitted into evidence showed no injury to the plaintiff.

An independent review of the record leads us to conclude that these findings were not clearly erroneous.

C. *Former Employment*

■ The law requires truthful answers to voir dire questioning. An untruthful response could indicate an attempt to conceal bias, which would provide the basis for a challenge for cause. *United States v. Perkins,* 748 F.2d 1519, 1532–33 (11th Cir. 1984); *United States v. Eubanks,* 591 F.2d 513, 516–17 (9th Cir.1979) (per curiam). This is clearly not the case here. There are no facts indicating any intention to hide the truth, and Fraser's answers to the questions posed were in fact truthful. Fraser was asked whether he had ever worked for Burlington Northern, and he answered that he had not. In fact he was employed by the Northern Pacific Railroad intermittently from 1935 until 1939, and again briefly in 1945; Burlington Northern did not even exist until 1970 when Northern Pacific and three other railroads merged to form Burlington Northern. Moreover, counsel passed the jury for cause without requesting an inquiry into former employment or employment with railroads other than Burlington Northern.

The test of whether the appellant can obtain a new trial in this type of situation was set forth in *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984): "to obtain a new trial ... a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause." The

plaintiff in *McDonough* brought a personal injury action after being injured by a lawn mower. On voir dire the prospective jurors were asked whether they or any members of their families had sustained any "injuries ... that resulted in any disability or prolonged pain and suffering." *Id.* at 550, 104 S.Ct. at 847. One of those who did not respond to this question was eventually selected as a juror. Four days after the trial, in which the jury found for the defendant, the plaintiff moved for a new trial, claiming juror misconduct after discovering that the juror's son had once received a broken leg from an exploding truck tire. *Id.* at 550–51, 104 S.Ct. at 847. The Court noted the disparity between what injuries various jurors could perceive as resulting in "disability or prolonged pain and suffering," and concluded, "[t]o invalidate the result of a 3–week trial because of a juror's mistaken, though honest, response to a question, is to insist on something closer to perfection than our judicial system can be expected to give." *Id.* at 555, 104 S.Ct. at 849–50.

We applied *McDonough* in *United States v. Aguon (Aguon II),* 851 F.2d 1158, 1170 (9th Cir.1988) (en banc), *modifying in part United States v. Aguon (Aguon I),* 813 F.2d 1413 (9th Cir.1987). In *Aguon I* the defendant had been convicted of extortion and conspiracy in violation of the Hobbs Act, making false statements before a grand jury, and conspiracy to obstruct justice. The defendant moved for a new trial after learning that one of the jurors pleaded guilty to a misdemeanor charge of taking kickbacks shortly after the trial, claiming that the similarity between the offenses defeated that juror's impartiality. The panel observed that although the juror was not asked specifically whether he was under any investigation, the members of the jury were asked a general question regarding their ability to be impartial. 813 F.2d at 1421. Concluding that the juror's silence to that question constituted intentional concealment of the truth, the panel reversed Aguon's convictions.

On rehearing *en banc,* we partially affirmed the convictions. Noting that the

juror was not asked at voir dire whether he was under investigation or whether he had been involved in situations similar to that of the defendant, we held "[t]here is no showing that [the juror] failed to answer honestly a material question." *Aguon II*, 851 F.2d at 1170. *McDonough*, and our interpretation of *McDonough* in *Aguon II*, govern the case at bar.

The appellant fails both steps of the *McDonough* inquiry. Regarding the first step of the *McDonough* test, juror Fraser was not asked any questions regarding his brief employment with the railroad nearly fifty years prior to trial, and his silence regarding dealings with Burlington Northern certainly did not constitute intentional concealment of the truth. We agree with the Eleventh Circuit that "we cannot put upon the jury the duty to respond to questions not posed." *United States v. Kerr*, 778 F.2d 690, 694 (11th Cir.1985) (not misrepresentation for juror who was married to former police officer to respond negatively to question concerning relationships with law enforcement personnel). Had counsel for the plaintiff wished to know about former employment or relationships with other railroads he should have asked. *See id.*

Assuming, arguendo, that we did find a failure by juror Fraser to answer voir dire questioning truthfully, the appellant's motion for a new trial fails under the second step of *McDonough*. The district court determined that Fraser would not have been subject to a challenge for cause even if it had been apprised fully of his former employment. The trial court has broad discretion in its rulings on challenges for cause, and can be reversed only for an abuse of discretion. *United States v. Brooklier*, 685 F.2d 1208, 1223 (9th Cir. 1982) (per curiam) (citing *Dennis v. United States*, 339 U.S. 162, 168, 70 S.Ct. 519, 521, 94 L.Ed. 734 (1950)), *cert. denied*, 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983).

Here the record provides ample support for the district court's finding that juror Fraser would not have been subject to a challenge for cause if he had fully disclosed his former employment. Fraser was employed by Burlington Northern's predecessor in 1935 and 1936, from the summer of 1937 until 1939, and again for a brief period in 1945. He has not been a railroad employee since 1945 and he has never been employed by Burlington Northern Railroad. The district court's conclusion that juror Fraser's former employment would not impair his ability to be a fair and impartial juror was not an abuse of discretion. *See Darbin v. Nourse*, 664 F.2d 1109, 1113 (9th Cir.1981) (challenges for cause to be "narrowly confined to instances in which threats to impartiality are admitted or presumed from the relationships, pecuniary interests, or clear biases of a prospective juror").

#### D. *Extraneous Information in Jury Deliberations*

It has long been established that a litigant "is entitled to a fair trial but not a perfect one." *Brown v. United States*, 411 U.S. 223, 231–32, 93 S.Ct. 1565, 1570–71, 36 L.Ed.2d 208 (1973) (quoting *Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968)); *Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953). Here the appellant urges the court that juror Fraser brought extraneous and prejudicial information to the attention of the jury by recounting his experiences with the railroad some fifty years prior and by claiming to have familiarity with the interpretation of x-rays stemming from his military service during World War II.

"The near-universal and firmly established common law rule in the United States flatly prohibited the admission of juror testimony to impeach a verdict." *Tanner v. United States*, 483 U.S. 107, 107 S.Ct. 2739, 2745, 97 L.Ed.2d 90 (1987); *McDonald v. Pless*, 238 U.S. 264, 267, 35 S.Ct. 783, 784, 59 L.Ed. 1300 (1915). Exceptions were made only where it was alleged that an "extraneous influence" affected the jury; courts nearly always refused to admit juror testimony concerning internal abnormalities absent a contemporaneous adjudication or an extremely strong showing of juror incompetence. *Tanner*, 107 S.Ct. at 2746–47; *see Mattox v. United States*,

146 U.S. 140, 149, 13 S.Ct. 50, 53, 36 L.Ed. 917 (1892) (exception for situations involving extraneous influence); *United States v. Pimentel,* 654 F.2d 538, 542 (9th Cir.1981) (juror testimony admissible only concerning facts bearing on extraneous influence on deliberations).

The type of after-acquired information that potentially taints a jury verdict should be carefully distinguished from the general knowledge, opinions, feelings, and bias that every juror carries into the jury room. Voir dire questioning is the proper method of uncovering prejudicial character traits of potential jurors. "Voir dire has long been recognized as an effective method of rooting out such bias, especially when conducted in a careful and thoroughgoing manner." *Patton v. Yount,* 467 U.S. 1025, 1038 n. 13, 104 S.Ct. 2885, 2892, 81 L.Ed.2d 847 (1984) (quoting *In re Application of National Broadcasting Co.,* 653 F.2d 609, 617 (D.C.Cir.1981)).

Fed.R.Evid. 606(b) governs the admissibility of juror testimony regarding a verdict. The rule is grounded in the common law rule against the admissibility of juror testimony to impeach a verdict and the exception for juror testimony relating to extraneous influence. *Tanner,* 107 S.Ct. at 2748. Rule 606(b) provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Where affidavits or juror testimony or other evidence of juror statements are offered to impeach a verdict, the district court must examine this material to decide whether it falls within the categories of admissible juror testimony permitted by Rule 606(b). Rule 606(b) permits testimony only on the questions of "whether *extraneous prejudicial information* was improperly brought to the jury's attention" and "whether any *outside influence* was improperly brought to bear on any juror." Rule 606(b) (emphasis added). Jurors may not testify as to how they or other jurors were affected by the extraneous prejudicial information or outside influence; they may only testify as to its existence. *Abatino v. United States,* 750 F.2d 1442, 1446 (9th Cir.1985) ("[J]urors may not be questioned about the deliberative process or subjective effects of extraneous information, nor can such information be considered by the trial or appellate courts.") (quoting *United States v. Bagnariol,* 665 F.2d 877, 884–85 (9th Cir.1981), *cert. denied,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982)). Rule 606(b) bars not just juror testimony but evidence of any sort as to a statement by a juror concerning jury deliberations, so long as a juror would be barred from making the same statement in the form of testimony in court. D. Louisell & C. Mueller, *Federal Evidence* § 286 at 119 (1979) (1988 Supp.).

Looking only at affidavits and testimony admissible under Rule 606(b), the court must decide whether an evidentiary hearing is required to determine whether a new trial is necessary. An evidentiary hearing is justified only when these materials are sufficient on their face to require setting aside the verdict. Where a losing party in a civil case seeks to impeach a jury verdict, it must be shown by a preponderance of the evidence that the outcome would have been different. Unless the affidavits on their face support this conclusion, no evidentiary hearing is required. Unless such a showing is made at the evidentiary hearing, no new trial is required. We agree with the Fifth Circuit that an appellate court should review the trial court's determination of whether a new

trial should be granted for an abuse of discretion. *See Robins v. Harum*, 773 F.2d 1004, 1006 (9th Cir.1985); *Martinez v. Food City, Inc.*, 658 F.2d 369, 372 (5th Cir.1981). We likewise agree that the trial court's choice of procedures for investigating allegations of juror misconduct—for example, whether to conduct an evidentiary hearing, or whether to subpoena jurors—should be reviewed for abuse of discretion. *Food City*, 658 F.2d at 372.

In *Hard I* we held that if a juror's past experiences were directly related to the litigation, as the affidavits filed in the district court claimed, the discussion of those experiences would constitute extraneous information that could be used to impeach a jury's verdict. *Hard*, 812 F.2d at 486. Because the affidavits presented to the district court stated that Fraser had been injured on the job with the defendant railroad and was familiar with their treatment of employee injuries, we remanded for an evidentiary hearing to determine whether Hard could establish the need for a new trial.

■ The trial judge considered the evidence, however, and found it inconclusive to show that Fraser was a former employee of Burlington Northern, or that he had discussed Burlington Northern's settlement practices. The trial judge further found the evidence inconclusive to show that Fraser attempted to persuade the jury that the x-rays admitted into evidence showed no injury to the plaintiff's back. On these points there was conflicting evidence. Affidavits garnered from three of the jurors by Hard's counsel substantiated Hard's claims in remarkably similar format. The testimony elicited from the jurors at the evidentiary hearing, however, was less than compelling, and at least one of the jurors had no recollection of any assertions by Fraser. The district judge was able to base his factual determination on the testimony and demeanor of all of the jurors at the evidentiary hearing; we cannot conclude that clear error was committed regarding extraneous and prejudicial information.

■ Moreover, even if Fraser did assert some special knowledge regarding x-ray interpretation we do not feel that a new trial would be warranted. It is expected that jurors will bring their life experiences to bear on the facts of a case. *Head v. Hargrave*, 105 U.S. 45, 49, 26 L.Ed. 1028 (1881). While it is clearly improper for jurors to decide a case based on personal knowledge of facts specific to the litigation, a basic understanding of x-ray interpretation falls outside the realm of impermissible influence.

Irrespective of juror Fraser's alleged familiarity with x-rays, the jury had ample evidence from which to conclude that Hard's alleged back injury was not caused by the litigated accident. There was testimony that the plaintiff did not report any injury to his back until some six months after the accident when he felt discomfort after jumping out of a swing. The jury was free to conclude that this incident, rather than the litigated accident, was the cause of appellant's alleged back injury.

## IV.

*Conclusion*

The lower court's decision to deny appellant's motion for a new trial was not an abuse of discretion; the findings of fact were not clearly erroneous and the law was correctly applied.

Accordingly, the decision of the district court is

AFFIRMED.