**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

KENDILE M. STEWART,
Plaintiff-Appellee,

v.                                                                                      No. 96-1537

AMUSEMENTS OF AMERICA,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, District Judge.
(CA-94-2671-2-18)

Argued: May 8, 1998

Decided: July 15, 1998

Before WIDENER and HAMILTON, Circuit Judges, and
FRIEDMAN, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Charles Elford Carpenter, Jr., RICHARDSON, PLOW-
DEN, CARPENTER & ROBINSON, P.A., Columbia, South Caro-
lina, for Appellant. George J. Kefalos, GEORGE J. KEFALOS, P.A.,
North Charleston, South Carolina, for Appellee. **ON BRIEF:** Debo-
rah Harrison Sheffield, RICHARDSON, PLOWDEN, CARPENTER
& ROBINSON, P.A., Columbia, South Carolina, for Appellant. Tim-

othy D. McCoy, MCCOY & TAYLOR, Charleston, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

The principal dispute in this appeal is whether certain statements allegedly made by a juror during jury deliberations in a negligence action constitute "extraneous prejudicial information" within Federal Rule of Evidence 606(b), such that another juror's affidavit attesting to the fact that her fellow juror made the statements is admissible to impeach the jury's verdict. The alleged prejudicial statements made by the juror during deliberations are: (1) that the juror was a lawyer; (2) that the jury could not send the judge a note stating that it could not agree as to the percentage of fault or that it could not agree or reach a decision; and (3) that the jury needed to compromise and reach an agreement. For reasons that follow, we hold that these statements do not constitute extraneous prejudicial information within the meaning of Federal Rule of Evidence 606(b).

I.

The plaintiff in this action, Kendile Stewart (Stewart), was injured on April 6, 1993 in an accident that occurred near St. Augustine, Florida when the tractor-trailer rig in which he was a passenger collided with another tractor-trailer rig that was pulling onto the highway. The rig in which Stewart was a passenger was owned by his employer, Wetterau, Inc., and was driven by one of Stewart's co-workers. The rig that was pulling onto the highway was owned by the defendant Amusements of America, Inc. (Amusements of America).

At the time of the accident, Stewart was a long-haul truck driver, and, as a result of the accident, Stewart suffered a compression frac-

2

ture to one of the vertebrae in his back, leaving him with a ten-percent whole-man impairment. According to Stewart's treating physician, this impairment prevented Stewart from performing heavy labor jobs and from continuing to work as a long-haul truck driver.

Stewart filed a complaint against Amusements of America in South Carolina state court on August 5, 1994. Amusements of America subsequently removed the case to the United States District Court for the District of South Carolina and proceeded to defend on the merits. On December 11, 1995, the case proceeded to trial, with the parties agreeing that the law of the State of Florida applied to all substantive issues in the case.

Prior to jury selection, all potential jurors in this case completed a juror questionnaire. Potential juror Frank Clement stated in his juror questionnaire that he had practiced law in Houston, Texas for about five years approximately twelve years ago and that he had been "swindled out of a law license ten years ago." (J.A. 28). Despite this information, neither party attempted to strike Frank Clement as a potential juror prior to final jury selection. Amusements of America, however, made a motion prior to the actual start of trial to have Frank Clement (Juror Clement) excused from jury service on the ground that his statement about being swindled out of a law license misrepresented the fact that he was actually disbarred. The district court denied the motion. In denying a renewed version of this motion made during trial, the district court stated that a reasonable person would infer from Juror Clement's questionnaire that he had been disbarred.

During the first day of trial, Juror Clement was found wandering the halls of the courthouse in defiance of the district court's instruction that jurors should remain in the jury room when not in the courtroom. On the third day of trial, the district court commented outside the presence of the jury that Juror Clement was a "loose cannon," who did not pay attention to what the court security officers or the clerks asked him to do, and that the court was probably going to excuse him for that reason, not for the statement in his juror questionnaire. (J.A. 475). During trial, Amusements of America twice renewed its motion to remove Juror Clement, but to no avail. Juror Clement was ultimately elected foreperson of the jury.

3

On December 15, 1995, the jury returned a verdict in favor of Stewart, finding Amusements of America ten percent at fault. The jury also found that Stewart had sustained $600,000.00 in economic damages and $150,000.00 in non-economic damages. [1] In response to a request by Amusements of America for a poll of the jury, each juror stated on the record in open court that the verdict as read in the court-room was his or her true and correct verdict.

After the jury announced its verdict and was released from duty, the district court spoke with the jurors, as is its custom, to thank them for their service and to answer any questions. At this time, one of the jurors asked the district court how much Stewart would actually recover. The district court answered that he would probably recover $350,000.00 to $400,000.00 after attorney's fees and costs.

Amusements of America subsequently filed a motion for a new trial nisi remittitur, or in the alternative, for a new trial on various grounds, including juror misconduct by Juror Clement and excessive-ness of the jury's award of economic damages. On the subject of juror misconduct, Amusements of America submitted an affidavit by another juror, Lillian Linder (Juror Linder), which stated, in pertinent part, that during jury deliberations, Juror Clement: (1) represented that he was a lawyer; (2) told the jury that it could not send the judge a note stating that the jury could not agree as to percentage of fault or that it could not agree or reach a decision; (3) told the jury that it needed to compromise and reach an agreement; and (4) misled the jurors as to how much money Stewart would receive. The district court denied Amusements of America's motion, and Amusements of America noted a timely appeal.

_____

**1** The parties agree that under applicable Florida law on comparative negligence, Amusements of America is liable for only ten-percent of the $150,000.00 in non-economic damages, but that it is liable for one-hundred percent of the $600,000.00 in economic damages, notwithstand-ing that the jury found Amusements of America only ten-percent at fault. The parties also agree that the district court properly instructed the jury not to make any reduction for the negligence, if any, of Stewart's co-worker in determining the amount of Stewart's damages, because the court, in entering judgment, would make an appropriate reduction to the total amount of damages awarded.

4

II.

Amusements of America first contends that the district court abused its discretion by denying its motion for a new trial predicated on juror misconduct. According to Amusements of America, the district court should have excused Juror Clement after he wandered the halls against the district court's instructions, because such conduct coupled with the alleged misleading statement in his juror questionnaire demonstrated disrespect for the court and his oath as a juror. Furthermore, according to Amusements of America, the four statements in Juror Linder's affidavit as set forth above are competent to establish that Juror Clement introduced extraneous prejudicial information to the jury, thereby precluding it from receiving a fair trial.

The denial of a motion for a new trial predicated on alleged juror misconduct is reviewed for abuse of discretion. See Knowlton v. Greenwood Indep. Sch. Dist., 957 F.2d 1172, 1177 (5th Cir. 1992). For reasons that follow, we affirm the district court's denial of Amusements of America's motion for a new trial predicated on alleged juror misconduct.

A. The Juror Questionnaire and Wandering the Halls

The district court rejected Amusements of America's argument that Juror Clement's juror questionnaire misled the parties into believing that he had a valid license to practice law. According to the district court, a common sense reading of the questionnaire leads a reasonable person to believe that Juror Clement had been disbarred. We fully agree, and further note that Amusements of America had an opportunity during voir dire of the jury to clear up any possible confusion regarding whether Juror Clement had a valid law license, but failed to take advantage of that opportunity. Accordingly, the district court properly determined that Juror Clement's questionnaire could not serve as a basis for granting Amusements of America a new trial.

Next, the district court rejected Amusements of America's argument that Juror Clement's initial refusal to stay in the jury room so that he could wander the halls of the courthouse warranted a new trial, because the district court found that Amusements of America failed to offer any evidence that it was prejudiced by his conduct. On this

5

point, the district court noted that "[w]hile it is true that Mr. Clement left the jury room during the first day of the trial, after he was cautioned by the court to remain in the jury room, this activity ceased." (J.A. 698 n.1). The district court obviously believed that despite Juror Clement's initial improper wandering from the jury room, he stayed true to his oath as a juror at all times critical to the fairness of the trial. Because the district court observed the jury on a day-to-day basis, the district court was in a much better position than this court to judge the demeanor of Juror Clement and the atmosphere of the courtroom in general. See United States v. Barnes, 604 F.2d 121, 144 (2d Cir. 1979) ("Appellate courts have given, and should give, broad discretion to trial judges to pass upon charges of juror misconduct . . . made visible in a tangible way. Other cases presented under other circumstances in other courtrooms may provide guidelines, but each case is actually Sui generis."). Accordingly, we see no reason to second guess the district court's judgment on this score.

B. Alleged Extraneous Information

The district court held that in considering the merits of Amusements of America's motion for a new trial, Federal Rule of Evidence 606(b) prohibited it from considering the four statements in Juror Linder's affidavit that Amusements of America offered in support of that motion. Rule 606(b) generally excludes testimony of a juror impeaching the verdict:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith . . . . Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Fed. R. Evid. 606(b). Rule 606(b) contains an exception allowing jurors to testify "on the question whether extraneous prejudicial information was improperly brought to the jury's attention . . . ." Id. On

appeal, Amusements of America contends that the district court erred in failing to conclude that Juror Linder's statements fell within this exception, a contention which is without merit.

Rule 606(b) does not define the phrase "extraneous prejudicial information." However, the phrase suggests a natural distinction between information that every juror brings to the jury room based upon his life experience on the one hand, and personal knowledge of facts specific to the litigation on the other hand. Other courts have recognized this natural distinction. For instance, in Silagy v. Peters, 905 F.2d 986 (7th Cir. 1990), the Seventh Circuit held that a juror's erroneous statements during deliberations in the sentencing phase of a capital murder prosecution to the effect that under Illinois law the defendant would serve no more than five to seven years if sentenced to life and would never be executed if sentenced to death, but would serve more than seven years, were merely a juror's erroneous ideas, and therefore, did not constitute extraneous prejudicial information under Rule 606(b). Id. at 1008-09. Furthermore, in Hard v. Burlington N. R.R. Co., 870 F.2d 1454 (9th Cir. 1989), the Ninth Circuit held that a juror's assertion during jury deliberations in a personal injury case of some special knowledge of x-ray interpretation, which the juror had acquired during military service, did not constitute extraneous prejudicial information under Rule 606(b), because the juror did not impart personal knowledge of facts specific to the litigation. Id. at 1462.

Here, Juror Clement's alleged statements during deliberations in which he: (1) identified himself as a lawyer; (2) expressed his view that the jury was not allowed to send notes to the judge indicating that it was deadlocked; and (3) expressed his view that the jury needed to reach a compromise fall squarely within the category of the type of general knowledge that every juror brings into the jury room by reason of the juror's life experience. Conversely, none of the information in these statements fall within the category of personal knowledge of facts specific to the litigation. Accordingly, the district court properly determined that Rule 606(b) prohibited it from considering these statements in Juror Linder's affidavit as competent evidence to impeach the jury's verdict.

As to Juror Linder's general statement that Juror Clement misled the jury regarding the amount of Stewart's potential recovery, the dis-

7

trict court properly determined that Rule 606(b) prohibited it from considering the statement as competent evidence of misconduct by Juror Clement. Because Juror Linder did not identify any information imparted by Juror Clement regarding the amount of Stewart's potential recovery, Rule 606(b)'s "extraneous prejudicial information" exception is obviously inapplicable. In an apparent attempt to avoid this conclusion, Amusements of America would have us read into Juror Linder's statement that Juror Clement erroneously informed the jury that under Florida law, Stewart would only be able to recover ten percent of any economic damage award that the jury returned. Because the record contains no evidence to this effect, any attempt to have us read Juror Linder's statement for any more than what it says must fail.

In sum, the district court correctly determined that none of the statements in Juror Linder's affidavit offered by Amusements of America in support of its motion for a new trial were competent to impeach the jury's verdict.

III.

Amusements of America next contends that the jury's award of $600,000.00 in economic damages is excessive, and therefore, the district court abused its discretion in refusing to grant it a new trial on that basis.**2** See Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 438-39 (1996) (holding that federal appellate review of a district court's denial of a motion for a new trial predicated on the excessiveness of the jury's damage award is for abuse of discretion). Once again, Amusements of America's contention is without merit.

After the district court denied Amusements of America's motion for a new trial predicated on the alleged excessiveness of the jury's economic damage award, the Supreme Court definitively established that a district court sitting in diversity must apply state law standards to determine whether a verdict is excessive. See Gasperini, 518 U.S. at 436-38. Accordingly, Florida law was applicable in determining whether the jury's economic damage award was excessive. Under

_____

**2** On appeal, Amusements of America does not challenge the district court's denial of its alternative motion for a new trial nisi remittitur.

8

Florida law, a jury's award is considered excessive only if the award "is so extravagant that it shocks the judicial conscience, is manifestly unsupported by the evidence, or otherwise affirmatively indicates that the jury has been unduly influenced by passion, prejudice, or other matters outside the record . . . ." Tobias v. Osorio, 681 So. 2d 905, 907 (Fla. Dist. Ct. App. 1996).

Here, the district court did not specifically test the jury's economic damage award against Florida law. However, it did conclude that the jury's economic damage award was not against the clear weight of the evidence and was not so excessive as to be a miscarriage of justice. In this circumstance, we believe that a remand for the district court to test the jury's award against Florida law would be an exercise in futility, because the district court, having found the jury's $600,000.00 economic damage award not to be against the clear weight of the evidence or a miscarriage of justice, would certainly find on remand the same award not to be: (1) so extravagant that it shocks the judicial conscience; (2) manifestly unsupported by the evidence; or (3) otherwise affirmatively indicating that the jury has been unduly influenced by passion, prejudice, or other matters outside the record.

After carefully reviewing the record, we hold that the jury's award of $600,000.00 in economic damages is not excessive under Florida law.[3] First, the record contains competent evidence that Stewart incurred $4,468.00 in pretrial medication expenses. Specifically, economist Dr. Perry Woodside (Dr. Woodside) testified that he calculated Stewart's pretrial medication expenses at $4,468.00 based upon information that Stewart gave him regarding the type of medications that Stewart was taking and for how long Stewart had been taking them. Second, the record contains competent evidence that Stewart incurred medical expenses, including physicians' charges, in the amount of $11,848.06, which Amusements of America does not challenge.

_____

[3] The parties agree that under Florida law, Stewart's economic damages constitute his past medical expenses, any medical expenses that he would incur in the future, an amount equal to his lost wages from the time of the accident until the day of trial, and any loss of future wages attributable to Amusements of America's tortious conduct.

9

Finally, the bulk of the damage award is attributable to competent evidence of Stewart's past and future lost wages. The record contains competent evidence that Stewart's past and future lost wages amount to between $538,279.00 and $758,300.00, depending upon the amount of Stewart's mitigating earnings. Stewart's evidence of lost wages is in the form of testimony by his treating physician, Dr. Mike Tyler, a vocational expert, Jean Hutchinson, and an economist, Dr. Woodside. Prior to the accident, Stewart was a long-haul truck driver. According to Dr. Tyler, a diagnostic surgeon, because Stewart continues to suffer pain from his compression fracture, he should avoid heavy work and truck driving. In addition, Dr. Tyler opined that Stewart could not bend or stoop for long periods of time. In all, Dr. Tyler estimated Stewart's permanent impairment at"[t]en percent of the whole man." See (J.A. 71).

Relying on Dr. Tyler's testimony as to Stewart's physical limitations, vocational expert Jean Hutchinson opined that Stewart's employment potential was limited to low or minimum wage paying jobs, requiring only very light work. In this regard, she testified that Stewart does not meet the true qualifications for medium work. She also testified that any appropriate job for Stewart"would have to be very, very light work with the ability to sit and stand as necessary, not a lot of carrying, no repetitious bending or stooping, or something like that." (J.A. 610). In terms of Stewart's expected pay scale under these conditions, Hutchinson testified that "[i]t's much lower," and that "[t]he jobs we're talking about are going to be entry level positions because he's essentially starting over, so we're looking at probably-- minimum wage is currently four twenty-five an hour, so we are probably looking at four twenty-five to five twenty-five an hour." (J.A. 610-11).

Economist Dr. Woodside calculated the difference between the amount of money that Stewart would have earned as a long-haul truck driver from the time of the accident until the age of sixty-five and the amount of money that he would likely earn at a low paying job ($4.25 to $5.00 per hour) of the type he physically could fill to be between $538,279.00 and $758,300.00, depending upon the amount of Stewart's mitigating earnings. Dr. Woodside's estimate also took into consideration earnings that Stewart had accrued during two different jobs that he held between the time of the accident and the time of trial.

10

Amusements of America acknowledges all of this evidence, but argues that it should be disregarded, primarily because Stewart did not have a valid driver's license at the time of trial due to a conviction for driving while intoxicated. Obviously, the jury did not believe that the loss of Stewart's driver's license was permanent such that it alone would have prevented him from ever returning to his past work as a long-haul truck driver. Accordingly, we reject Amusements of America's argument.

In summary, the jury's award of $600,000.00 in economic damages in favor of Stewart is certainly not excessive under Florida law.

IV.

In conclusion, we affirm the district court's denial of Amusements of America's motion for a new trial predicated on alleged juror misconduct and the alleged excessiveness of the jury's award of economic damages as a valid exercise of the district court's discretion.

AFFIRMED

11