**TIG INSURANCE COMPANY,**
Plaintiff,

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Liberty Mutual Fire Insurance Company, Defendants.**

No. 99–766–PHX–ROS.

United States District Court,
D. Arizona.

Jan. 16, 2003.

Mark A. Sandberg, R. Douglas Dalton, Dalton PLC, Phoenix, AZ, Sandberg Wuestenfeld & Corey, Anchorage, AK, for plaintiff.

William J. Schrank, Donald L. Myles, Jr., Jones Skelton & Hochuli PLC, Phoenix, AZ, for Liberty Mut. Ins. Co., defendant.

Mark Andrew Fuller, Keller Rohrback PLC, Phoenix, AZ, Mark A. Sandberg, Sandberg Wuestenfeld & Corey, Anchorage, AK, for John/Jane Does 1-10, defendants.

## ORDER

SILVER, District Judge.

On Sept. 27,2002, following a six-day trial, the jury returned a verdict for Plaintiff against Defendants [Doc. # 317]. The Court allowed trial counsel a brief period following the trial to question jurors who voluntarily agreed to speak to them. Following those interviews, Defendant filed Motion to Interview Jurors Based on Juror Misconduct [Doc. # 330]. For the reasons set forth, Defendants' Motion will be denied.

### Discussion

The first trial in this case ended in a hung jury, and the retrial ended in a verdict for Plaintiff, TIG Insurance Company. Following the announcement of the verdict, despite the limitations of Local Rule 1.11, counsel were given limited time to speak with jurors. This luxury, not afforded counsel in other district courts, is designed to permit counsel to avail themselves of constructive feedback from jurors regarding the effectiveness of their presentation of evidence; it is not designed as a method and means of conducting an inquisition into the jurors' deliberative processes. According to the sworn affidavit of Defendants' counsel, Mr. Robert Seide, one juror indicated that she had "brought in a dictionary." Aff. of Seide [Doc.# 332]. Defendants now request they be granted permission to serve interrogatories upon at least two of the jurors to determine the extent of the use of the dictionary. This request will be denied.

The Local Rules provide for limited contact between counsel and jurors. Rule 1.11(b) provides that, "Interviews with jurors after trial by or on behalf of parties involved in the trial are prohibited," except where an attorney files written interrogatories and an affidavit setting forth reasons for the proposed interrogatories.

"Approval for the interview of jurors ... will be granted *only* upon the showing of good cause." *Id.* (emphasis added). As the Supreme Court has noted, "long-recognized and very substantial concerns support the protections of jury deliberations from intrusive inquiry." *Tanner v. United States,* 483 U.S. 107, 127, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987).

■ Additionally, Fed.R.Evid. 606(b) restricts the use of juror testimony about the jury deliberation process. Rule 606(b) provides, in part, "a juror may not testify as to any matter of statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent or dissent ... or concerning the juror's mental processes in connection therewith." Rule 606(b) does provide a narrow exception for the admissibility of juror testimony: "a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Though jurors may testify about the presence of extraneous information, "[j]urors may not testify as to how they or other jurors were affected by the extraneous prejudicial information or outside influence; they may only testify as to its existence." *Hard v. Burlington Northern Railroad Co.,* 870 F.2d 1454, 1461 (9th Cir.1989).

■ Defendants bear the burden of showing that the verdict would have been different but for the presence of the external influence. "Where a losing party in a civil case seeks to impeach a jury verdict, it must be shown by a preponderance of the evidence that the outcome would have been different." *Hard,* 870 F.2d at 1461. Without such a showing, the Court need not order additional investigation, since, "[a]n evidentiary hearing is justified only when these materials are sufficient on their face to require setting aside a verdict." *Id.*

■ Defendants concede that they cannot articulate how that they can meet the burden of proof required by the Ninth Circuit under *Hard* to impeach a verdict. Defendants admit they are "currently at the investigation stage." Defs Reply at 2. In response to Plaintiffs clear argument that Defendants cannot meet the Ninth Circuit test, they "concede that issue," but claim "that is the purpose for obtaining additional information" and "[w]hether it rises to the level required by those cases in the Ninth Circuit is yet unknown." *Id.* Defendants' burden, however, is to show that the information they seek will show by a preponderance of the evidence that the outcome would have been different. Defendants admit again in their Reply that they do not yet have such information and cannot specify what it would be. They are not entitled to question the jury based on suspicion. *See* Local Rule 1.11(b).

Further, the juror testimony itself would be of limited usefulness in establishing prejudice. It is impermissible for jurors to testify as to the effect of the dictionary on their decision-making. *Hard,* 870 F.2d at 1461; Fed R. Evid. 606(b). To find prejudice, the Court would have to infer how the juror's decisions were affected by the presence of a dictionary containing many thousands of words, because the mere use of a dictionary definition does imply prejudice. *See, e.g., Karis v. Calderon,* 283 F.3d 1117, 1129 n. 6 (9th Cir.2002) (upholding district court finding that juror use of dictionary to define "circumstantial" was not misconduct).

Finally, Defendants overlook the fact that the jury was already provided dictionary definitions of the terms that Defendants contend were most important. In fact, the jury was provided dictionary defi-

nitions of "attempt" and "initiate," the two key terms in dispute following the first trial. When preparing for the retrial, Defendants proposed to add dictionary definitions of those terms, and the definitions were incorporated into the jury instructions. Exh. B, D to Pl's Opposition. Moreover, the source of the definitions, the Merriam–Webster Collegiate Dictionary, appears to be the *same* dictionary that one juror indicated was brought into the jury room. Exh. D to Pl's Opposition; Aff. of Seide [Doc. # 332]. Even if the dictionaries were not exactly the same, Defendants offer no persuasive evidence why one particular dictionary definition would be prejudicial. Dictionary definitions are generally considered prejudicial if they differ from *legal* definitions of terms. *See, e.g., Mayhue v. St. Francis Hosp. of Wichita, Inc.*, 969 F.2d 919, 924 (10th Cir.1992).

For these reasons, Defendants' motion to further interview jurors will be denied.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Interview Jurors Based on Juror Misconduct [Doc. # 330] is **DENIED**.