**UNITED STATES of America, Plaintiff—Appellee,**

v.

**Yssouf DIABATE, Defendant— Appellant.**

**No. 07–50259.**

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 19, 2008.*

Filed Nov. 21, 2008.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed.  R.App. P. 34(a)(2)(C).

William P. Cole, Esq., USSD–Office of the U.S. Attorney, San Diego, CA, for Plaintiff–Appellee.

Yssouf Diabate, Winton, NC, pro se.

Before: BRIGHT,** HAWKINS, and TASHIMA, Circuit Judges.

## MEMORANDUM ***

Yssouf Diabate ("Diabate") appeals his jury conviction for one count of attempted export of defense articles without a license, in violation of 22 U.S.C. § 2778(b)(2) and (c), and one count of smuggling goods from the United States, in violation of 18 U.S.C. § 554. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[1]

■ Because Diabate did not object to the prosecutor's closing argument, we review Diabate's claim of prosecutorial misconduct for plain error. *See United States v. Weatherspoon*, 410 F.3d 1142, 1150–51 (9th Cir.2005). We reject Diabate's contention that the prosecutor's statements during closing argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Diabate does not challenge the reasonable doubt jury instruction, including its statement that reasonable doubt is "doubt based on reason and common sense." The prosecutor merely rephrased this unobjected-to instruction, inviting the jury to use its common sense and experience in making its determination. Indeed, the jury could not have drawn reasonable inferences from the evidence without applying its common sense, general knowledge, and life experience. *Hard v. Burlington N.R. Co.*, 870 F.2d 1454, 1462 (9th Cir. 1989).

■ Diabate also suggests that the prosecutor's references to life decisions, such as buying a house and getting married, were impermissible under *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), in which the Court disfavored phrasing the reasonable doubt standard as doubt "which [people] in the more serious and important affairs of [their] own lives might be willing to act upon." *Id.* at 140, 75 S.Ct. 127. Here, however, it was the *defense* that compared

---

** The Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

*** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Cir. R. 36–3.

1. Because the parties are familiar with the facts and procedural history, we do not restate them here, except as necessary to explain our disposition.

the reasonable doubt standard to home purchases and marriage, and the government merely refuted the defense's suggestion, saying that the jury's task was not comparable to home purchasing and other similar decisions.

Next, Diabate argues that the prosecutor committed misconduct by directing jurors to rely on extrajudicial experience to determine guilt. Due process requires that guilt be determined only on the evidence adduced at trial, not on suspicion, defendant's status as a defendant, or facts not in evidence. *Taylor v. Kentucky*, 436 U.S. 478, 486–88, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978). However, "[i]t is expected that jurors will bring their life experiences to bear on the facts of a case." *Hard*, 870 F.2d at 1462 (quoting *Head v. Hargrave*, 105 U.S. 45, 49, 26 L.Ed. 1028 (1881)).

■ Here, the prosecutor did not suggest that the jury consider personal knowledge of facts specific to the case, but only called on jurors, in essence, to place the evidence presented to them within the analytic framework of their experiences and resulting common sense. Even the prosecutor's remark that it is common sense that there are paperwork requirements for exporting defense items addresses the plausibility of Diabate's claim of ignorance, not extrajudicial facts specific to the litigation. Moreover, the jury had already been told that export licenses were in fact required, so that fact was not extrajudicial. There was no prosecutorial misconduct in the government's closing argument.

Diabate never moved in the district court to dismiss the indictment for outrageous governmental misconduct. Therefore, we review his claim that the indictment should have been dismissed on this ground for plain error. *See United States v. Burt*, 143 F.3d 1215, 1217–18 (9th Cir. 1998). Outrageous governmental misconduct is similar to a claim of entrapment, with a few principal differences, including that, in the former, we must consider the government's behavior, not the defendant's mental state or predisposition. *United States v. McClelland*, 72 F.3d 717, 721 n. 1 (9th Cir.1995). Further, "a successful due process defense must be predicated on intolerable government conduct which goes beyond that necessary to sustain an entrapment defense." *Id.* (citing *United States v. Bogart*, 783 F.2d 1428, 1435 (9th Cir.1986)).

> For a due process dismissal, the Government's conduct must be so grossly shocking and so outrageous as to violate the universal sense of justice. This is an extremely high standard for the defendant to meet. The Government may violate the Due Process Clause either by completely fabricating the crime solely to secure the defendant's conviction, or by using excessive physical or mental coercion.

*Id.* at 721 (citations and quotation marks omitted). Here, the jury rejected Diabate's entrapment defense, necessarily finding that the government's conduct was insufficient to sustain that defense, let alone an outrageous misconduct claim.

■ In *McClelland*, the defendant argued that the government had committed outrageous misconduct by manufacturing his offense: a government informant had encouraged the defendant to pursue the defendant's expressed desire to have his ex-wife killed. *Id.* at 720. We held that the informant's encouragement did not constitute manufacturing of the crime because "[o]nly when 'government agents engineer and direct the criminal enterprise from start to finish,' does their behavior constitute manufacturing a crime and violate due process." *Id.* at 721–22 (citation omitted). Diabate has not proven that the government engineered and directed the criminal enterprise from start to finish.

Instead, the government only contacted Diabate and began working with him after he had expressed repeated and consistent interest in acquiring high-capacity magazines and firearms for shipment to the Ivory Coast. The government merely facilitated an existing interest that Diabate had attempted to pursue through multiple avenues. Additionally, Diabate himself conceived of many of the specific ideas for implementing the arms export (e.g., applying Transportation Security Administration tape to the packaging). As in *McClelland*, where the defendant expressed an initial desire to have his ex-wife killed and then the government informant not only encouraged the "hit" but also procured fake poison, *see id.* at 719–21, here Diabate expressed an initial desire to export arms to the Ivory Coast, and the government agent helped Diabate procure weapons and arrange the specific means of export. Diabate's case is analogous to the governmental conduct that we declined to conclude was outrageous in *McClelland*. In sum, the government's actions fall far short of the level of involvement required to sustain a claim of outrageous governmental misconduct.

The judgment of conviction is **AFFIRMED.**